# Whether a Military Officer May Continue on Terminal Leave After He Is Appointed to a Federal Civilian Position Covered by 10 U.S.C. § 973(b)(2)(A)

An active duty military officer on terminal leave who meets the requirements of 5 U.S.C. § 5334a may continue on terminal leave status after his appointment or election to a position covered by 10 U.S.C. § 973(b)(2)(A).

March 24, 2016

MEMORANDUM OPINION FOR THE PRINCIPAL DEPUTY GENERAL COUNSEL
DEPARTMENT OF HOMELAND SECURITY

You asked whether an active duty military officer on terminal leave may continue on terminal leave status after being appointed or elected to a position covered by 10 U.S.C. § 973(b)(2)(A), a provision that prohibits active duty military officers from holding certain civilian offices in the federal government.[1] We advised you orally and by e-mail that a military officer appointed or elected to such a position may continue on terminal leave status.[2] This opinion further memorializes and explains the basis for that advice. In brief, section 973(b)(2)(A) provides that an active duty military officer may hold a covered position if doing so is "otherwise authorized by law," and another statute, 5 U.S.C. § 5534a, specifically permits "[a] member of a uniformed service" on "terminal leave" to accept "a civilian office or position in the Government of the United States" and to "receive the pay of that office or position in addition to pay and allowances from the uniformed service for the unexpired portion of the terminal leave." In light of 5 U.S.C. § 5534a, an officer on terminal leave status is in our view "authorized by law" to serve in a position covered by 10 U.S.C. § 973(b)(2)(A).

## I.

We begin with the relevant background and statutory text. Section 973(b)(2)(A) of title 10 of the United States Code generally prohibits active duty military

---

[1] E-mail for Rosemary Hart, Office of Legal Counsel, from Joseph B. Maher, Principal Deputy General Counsel, U.S. Department of Homeland Security (June 23, 2015 6:58 PM) ("Maher E-mail").

[2] *See* E-mail for Joseph B. Maher, Principal Deputy General Counsel, U.S. Department of Homeland Security, from Brian M. Boynton, Deputy Assistant Attorney General, Office of Legal Counsel (Aug. 20, 2015 2:33 PM). In reaching this conclusion, we also considered the views of the Department of Defense, as expressed in a telephone conversation between Brian M. Boynton, Deputy Assistant Attorney General, Office of Legal Counsel, Paul S. Koffsky, Deputy General Counsel, Department of Defense, Steven T. Strong, Associate Deputy General Counsel, Department of Defense, Joseph B. Maher, Principal Deputy General Counsel, U.S. Department of Homeland Security, and Neal Swartz, Associate General Counsel, U.S. Department of Homeland Security, on June 29, 2015.

officers from holding certain high-level civilian offices in the federal government. In particular, it provides:

> Except as otherwise authorized by law, an officer to whom this subsection applies may not hold, or exercise the functions of, a civil office in the Government of the United States—
>
> (i) that is an elective office;
>
> (ii) that requires an appointment by the President by and with the advice and consent of the Senate; or
>
> (iii) that is a position in the Executive Schedule under sections 5312 through 5317 of title 5.

Paragraph 1 of section 973(b) explains that the prohibition on holding or exercising the functions of covered offices applies to "regular officer[s] of an armed force on the active-duty list (and . . . regular officer[s] of the Coast Guard on the active duty promotion list)," as well as to retired and reserve officers serving on active duty in certain circumstances.

Your question concerns the application of section 973(b)(2)(A)'s prohibition on federal civil office holding to members of the military on terminal leave. "'Terminal leave' is 'a term of art originating during World War II' meaning 'a leave of absence granted at the end of one's period of service.'" *Rate of Accrual of Annual Leave by a Civilian Employee Appointed While on Terminal Leave Pending Retirement From One of the Uniformed Services*, 31 Op. O.L.C. 218, 218 (2007) (quoting *Terry v. United States*, 97 F. Supp. 804, 806 (Ct. Cl. 1951)). An officer on terminal leave is considered to be on active duty status. *See id.* at 219; *see also Madsen v. United States*, 841 F.2d 1011, 1013 (10th Cir. 1987) ("Terminal leave, or leave taken prior to discharge, is statutorily defined as active duty service." (citing 10 U.S.C. § 701(e) (1982))). Thus, a military officer on terminal leave is subject to section 973(b)(2)(A)'s general prohibition.

A different statute, 5 U.S.C. § 5534a, establishes rules for dual pay and employment during an officer's period of terminal leave. In relevant part, section 5534a provides:

> A member of a uniformed service who has performed active service and who is on terminal leave pending separation from, or release from active duty in, that service under honorable conditions may accept a civilian office or position in the Government of the United States, its territories or possessions, or the government of the District of Columbia, and he is entitled to receive the pay of that office or position in addition to pay and allowances from the uniformed service for the unexpired portion of the terminal leave.

As you pointed out in your request for advice, under one view of these statutes, "[section] 5534a serves as an affirmative authority [for military members on terminal leave to hold covered positions] that fits within the qualification of [section] 973(b)(2)(A) stating that its prohibition applies '[e]xcept as otherwise authorized by law.'" Maher E-mail. Under another view, "[section] 973[(b)(2)(A)] provides the more specific rule regarding military officers appointed to certain [civilian positions in the federal government] and would therefore prohibit continuation of military status (i.e., terminal leave) upon appointment" to a covered position. *Id.* The Department of Defense ("DoD") holds the latter view. For the reasons explained below, we believe the first is the better reading of the two statutes, and therefore conclude that an officer on terminal leave status is "authorized by law" to hold a position covered by section 973(b)(2)(A).

## II.

### A.

We first analyze the text of sections 973(b)(2)(A) and 5534a. The Supreme Court has explained that, where two statutes govern the same subject matter, "'the rule is to give effect to both if possible.'" *Morton v. Mancari*, 417 U.S. 535, 551 (1974) (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939)); *see also, e.g.*, *FCC v. NextWave Personal Commc'ns*, 537 U.S. 293, 304 (2003); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143–44 (2001); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984). "Only where a harmonious construction of two statutes is impossible should one be construed as overriding or implicitly repealing the other." *The Department of Justice Inspector General's Access to Information Protected by the Federal Wiretap Act, Rule 6(e) of the Federal Rules of Criminal Procedure, and Section 626 of the Fair Credit Reporting Act*, 39 Op. O.L.C. ___, *7 (July 20, 2015) (citing *Morton*, 417 U.S. at 551), http://www.justice.gov/olc/opinions.htm.

Although section 973(b)(2)(A) and section 5534a govern the same subject matter—whether active duty military officers may hold civilian positions in the federal government—they are not, in our view, irreconcilable. As described above, section 973(b)(2)(A) provides that active duty officers may not hold certain federal civilian offices "except as otherwise authorized by law." 10 U.S.C. § 973(b)(2)(A). Section 5534a permits active duty military members on terminal leave to accept civilian offices and to be paid as employees of the federal government. In other words, pursuant to section 5534a, active duty military members, including officers, who are on terminal leave are specifically "authorized by law" to hold civilian offices. Officers to whom section 973(b)(2)(A) would otherwise apply are therefore exempted from the statute's prohibition by virtue of their terminal leave status. In contrast, officers who are not on terminal leave and are

not "otherwise authorized by law" to hold covered positions remain subject to section 973(b)(2)(A). So understood, section 973(b)(2)(A) and section 5534a do not conflict, but rather co-exist as part of a single, coherent statutory scheme.

As noted above, DoD disagrees with this interpretation. As we understand its position, DoD believes section 973(b)(2)(A)'s "otherwise authorized by law" exception covers only statutes that refer to specific civilian offices, and not statutes like section 5534a that authorize a class of active duty officers to hold civilian positions. Further, in DoD's view, section 973(b)(2)(A) is more specific than section 5534a and was enacted later in time. As a result, DoD believes that section 973(b)(2)(A) must be understood to override section 5534a. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (where "a general permission or prohibition is contradicted by a specific prohibition or permission . . . the specific provision is construed as an exception to the general one"); *Tenn. Gas Pipeline Co. v. FERC*, 626 F.2d 1020, 1022 (D.C. Cir. 1980) (finding that a "latter law" controls an earlier one (citing C. Dallas Sands, 2A *Sutherland on Statutory Construction* § 51.03, at 300 (4th ed. 1972))).

We disagree with this position for a number of reasons. Most fundamentally, we believe section 973(b)(2)(A)'s "otherwise authorized by law" exception includes authorization under section 5534a. DoD is correct that Congress has enacted statutes specifically authorizing active duty officers to hold certain positions subject to section 973(b)(2)(A)'s prohibition. *See* 10 U.S.C. § 528 (authorizing military officers to hold certain positions in the Intelligence Community, including CIA Director); *see also id.* §§ 3017(b), 5036(c), 8017(b) (1982) (noting that, if an active duty military officer temporarily acted as Secretary of the Army, Navy, or Air Force, such service should not "be considered as the holding of a civil office within the meaning of section 973(b)"); *cf.* 40 U.S.C. § 311(c) (authorizing the Administrator of the General Services Administration to "use the services" of "armed services personnel" "[n]otwithstanding section 973 of title 10"). But nothing in the provision's text indicates that the "otherwise authorized by law" exception should be read to apply *only* to those statutes, and not to more general authorizations, as its plain language would suggest. The provision does not, for example, prohibit a military officer from holding a covered position "except as otherwise authorized by a statute expressly referring to section 973(b)," or "except as otherwise authorized by a statute referring to a specified position." The provision's "otherwise authorized by law" clause also does not list specific statutes authorizing active duty officers to hold particular civilian offices. *Compare* 16 U.S.C. § 2403(b)(1) ("It is unlawful for any person, unless authorized by a permit issued under this chapter . . . to dispose of any waste in Antarctica (except as otherwise authorized by the Act to Prevent Pollution from Ships)"). Absent some basis in the language of section 973(b)(2)(A) to construe the phrase "otherwise authorized by law" narrowly, and in light of the principle that competing statutes should be interpreted harmoniously whenever possible, we see no reason to exclude section 5534a from the reach of section 973(b)(2)(A)'s exception.

Because 10 U.S.C. § 973(b)(2)(A) can be read in harmony with 5 U.S.C. § 5534a, there is no need to resort to the canons of statutory construction on which DoD relies—the "rule of relative specificity" and the principle that a later-enacted statute will control an earlier one. *See, e.g.*, *Nat'l Cable & Telecomm. Ass'n v. Gulf Power Co.*, 534 U.S. 327, 335–36 (2002) ("It is true that specific statutory language should control more general language when there is a conflict between the two. Here, however, there is no conflict."); *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) ("We will not infer a statutory repeal unless the later statute expressly contradict[s] the original act or unless such a construction is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all." (alterations in original) (internal quotation marks omitted)). But even if those canons were applicable, neither would compel the reading of the relevant statutory provisions DoD advances.

We agree that section 973(b)(2)(A) is more specific than section 5534a with respect to the federal civilian positions it covers. It applies only to elected, presidentially appointed, and Executive Schedule offices, while section 5534a applies to all civilian offices and positions in the federal government. Additionally, section 973(b)(2)(A) applies only to "officer[s]" in the military, while section 5534a applies to all "member[s] of a uniformed service." But section 5534a is more specific with respect to the status of the active duty military members to whom it applies. Where section 973(b)(2)(A) applies to all "regular officer[s] of an armed force on the active-duty list (and . . . regular officer[s] of the Coast Guard on the active duty promotion list)," as well as to certain retired and reserve officers, *see* 10 U.S.C. § 973(b)(1), section 5534a applies only to members of the military on terminal leave. Section 5534a thus applies to a category of military members in a very specific situation: those who are nearing the end of their military service and are using the unexhausted portion of their accumulated leave prior to separation. As we have previously noted, where competing statutory provisions are "more specific" in one respect but "less specific" in another, the rule of relative specificity is unhelpful in resolving the conflict between them. *See Restrictions on Travel by Voice of America Correspondents*, 23 Op. O.L.C. 192, 195 n.2 (1999) ("We cannot resolve the issue by turning to the principle that, absent a clear intention to the contrary, a specific statute controls a general one. Although the statutes on which the State Department relies are the more specific ones on the question of safety, they are less specific on the question of VOA's freedom to report the news." (citation omitted)); *cf. Gulf War Veterans Health Statutes*, 23 Op. O.L.C. 49, 52 (1999) (finding the rule inconclusive where "the two provisions are at the same order of specificity"). Accordingly, we do not believe the rule of relative specificity would be dispositive here even if it applied.

We are also unpersuaded by DoD's reliance on the principle that a later enactment controls an earlier one. Although, as explained below, section 973(b) was amended to take its current form in 1983, the prohibition on military officers serving in federal civilian offices has existed in some form since 1870. The

authorization for military members on terminal leave to hold civilian offices, in contrast—now section 5534a—originated in 1945. It is thus unclear how this "later in time" canon would apply here. Moreover, even if section 973(b)(2)(A) were in all relevant respects a later-enacted provision, we do not believe its priority of enactment would be sufficient to demonstrate that it was intended to override section 5534a. The Supreme Court has explained that "[w]hile a later enacted statute . . . can sometimes operate to amend or even repeal an earlier statutory provision . . . , 'repeals by implication are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.'" *Defenders of Wildlife*, 551 U.S. at 662 (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981) (alteration in original)). Here, DoD's reading would compel the conclusion that the 1983 amendment to section 973(b) implicitly repealed section 5534a, at least with respect to the military officers subject to section 973(b)(2)(A)'s prohibition and the federal civilian offices to which the prohibition applies. But nothing in the language of section 973(b)(2)(A) makes such an intent "clear and manifest."

We thus conclude that the text of section 973(b)(2)(A) and section 5534a supports the conclusion that military officers on terminal leave who satisfy the requirements of section 5534a may hold covered federal civilian offices notwithstanding the general prohibition in section 973(b)(2)(A).

### B.

In light of the plain language of section 973(b)(2)(A)'s "otherwise authorized by law" exception, there is no need to consider the legislative history of section 973(b)(a)(A) and section 5534a. To the extent that that history is considered, however, it supports the conclusion drawn from the text of the provisions, and affirmatively suggests that Congress intended section 5534a to operate as an exception to section 973(b)(2)(A).

The prohibition on active duty military officers holding civilian positions dates back to the years immediately following the Civil War. In 1870, Congress enacted a statute providing that "it shall not be lawful for any officer of the Army of the United States on the active list to hold any civil office, whether by election or appointment, and any such officer accepting or exercising the functions of a civil office shall at once cease to be an officer of the army, and his commission shall be vacated thereby." Act of July 15, 1870, ch. 294, § 18, 16 Stat. 315, 319. This prohibition appeared as section 1222 of the Revised Statutes and was made part of the United States Code in the 1925 edition as 10 U.S.C. § 576. *See* Rev. Stat. § 1222 (1st ed. 1875), 18 Stat. pt. 1, at 215 ("No officer of the Army on the active list shall hold any civil office, whether by election or appointment, and every such officer who accepts or exercises the functions of a civil office shall thereby cease to be an officer of the Army, and his commission shall be thereby vacated."); 10 U.S.C. § 576 (1925) (same).

Section 5534a originated in the post-World War II period. Facing an influx of soldiers returning from the War, Congress sought to ensure that members of the military would not be forced to choose between forfeiting unused leave and taking civilian positions in the federal government. A committee report accompanying the precursor to section 5534a explained that, under then-current law, "[a]lthough members of the armed forces on terminal leave may accept private employment without forfeiting the pay and allowances to which they are entitled while on terminal leave, they may not . . . accept employment in civilian positions under the Federal Government and receive compensation for such employment concurrently with the receipt of military pay and allowances." H.R. Rep. No. 79-1163, at 1 (1945). To address that problem, Congress enacted the Act of November 21, 1945. In relevant part, that law provided:

> Any person, who, subsequent to May 1, 1940, shall have performed active service in the armed forces, may, while on terminal leave pending separation from or release from active duty in such service under honorable conditions, enter or reenter employment of the Government of the United States, its Territories, or possessions, or the District of Columbia . . . and, in addition to compensation for such employment, shall be entitled to receive pay and allowances from the armed forces for the unexpired portion of such terminal leave at the same rates and to the same extent as if he had not entered or reentered such employment.

Pub. L. No. 79-226, sec. 1, § 2(a), 59 Stat. 584, 584; *see also* H.R. Rep. No. 79-1163, at 2 (explaining the purpose of the proposed legislation).

Notably, the committee report on the 1945 statute specifically cited the precursor to section 973(b)(2)(A)—section 1222 of the Revised Statutes—as one of the statutory obstacles to Army officers holding civilian positions in the federal government. *See* H.R. Rep. No. 79-1163, at 1 ("Section 1222 of the Revised Statutes also prohibits any officer of the Army on the active list from holding civilian office."). The report's reference to section 1222 suggests that, at least in the relevant House committee's view, the new provision was intended to override that limitation. And, citing this legislative history, the Comptroller General concluded in 1946 that the 1945 precursor to section 5534a did just that. *See* 25 Comp. Gen. 677, 679 (1946). As the Comptroller General explained:

> [A]n examination of the legislative history of the said act of November 21, 1945, discloses that the provisions of section 1222, along with the various statutes prohibiting dual employment and the receipt of double compensation, were particularly brought to the attention of the Congressional committee considering the proposed legislation. And that it was the intent of the Congress to authorize the benefits

provided by the said 1945 statute notwithstanding the provisions of such laws, including section 1222, Revised Statutes, clearly appears from House Report 1163, accompanying S. 1036 (which, as amended by the House of Representatives, became the act of November 21, 1945), wherein specific mention is made of section 1222, Revised Statutes, as well as the dual employment and dual compensation statutes, as constituting existing legislation the provisions of which were intended to be avoided by enactment of the bill.

*Id.*[3]

The relevant statutory provisions were subsequently revised and transferred, but none of these changes suggests that Congress had a different view of the relationship between the two provisions. In 1956, the precursor to section 973(b) was amended and recodified as 10 U.S.C. § 3544(b). *See* Pub. L. No. 84-1028, 70A Stat. 1, 203 (1956). The language "[e]xcept as otherwise provided by law" was added at this time. According to the Historical and Revision Notes in the 1958 version of the United States Code, "the words 'Except as otherwise provided by law' [we]re inserted, since other laws enacted after the date of enactment of [10 U.S.C. § 576] authorize the performance of the functions of certain civil offices." 10 U.S.C. § 3544 (1958) (Historical and Revision Notes). Although this statement appears to refer to laws permitting Army officers to occupy particular civilian offices, it does not in our view suggest that the phrase "[e]xcept as otherwise provided by law" should be read—contrary to its plain language—to include *only* those statutes. Moreover, nothing in the legislative history of the 1956 recodification indicates an intent to alter the prior understanding—reflected in the legislative history of the Act of November 21, 1945 and the 1946 Comptroller General opinion relying on that history—that the terminal leave provision operated as an exception to the prohibition on Army officers serving in federal civilian positions.

In 1967, the terminal leave provision previously added in 1945 was revised and codified at 5 U.S.C. § 5534a. *See* Pub. L. No. 90-83, § 22, 81 Stat. 195, 199–200 (1967). The new section 5534a was in relevant parts the same as the current version. In 1968, the prohibition on active duty Army officers holding civilian offices, then codified at 10 U.S.C. § 3544(b), was expanded to cover officers of the Navy, Air Force, Marine Corps, and Coast Guard, and was recodified as 10 U.S.C. § 973(b). *See* Pub. L. No. 90-235, § 4(a)(5)(A), 81 Stat. 753, 759 (1968). At that time, section 973(b) provided:

---

[3] The Comptroller General affirmed this position in 1965. *See* 45 Comp. Gen. 180, 181 (1965) ("In decision of March 28, 1946, 25 Comp. Gen. 677, we held that the provisions of [the Act of Nov. 2. 1045] supersede the provisions of section 1222, Revised Statutes . . . .").

> Except as otherwise provided by law, no officer on the active list of
> the Regular Army, Regular Navy, Regular Air Force, Regular Ma-
> rine Corps, or Regular Coast Guard may hold a civil office by elec-
> tion or appointment, whether under the United States, a Territory or
> possession, or a State. The acceptance of such a civil office or the
> exercise of its functions by such an officer terminates his military
> appointment.

*Id.*

In 1983, our office concluded that 10 U.S.C. § 973(b) barred Judge Advocate General officers from being appointed as Special Assistant United States Attorneys to prosecute petty offenses on military reservations. *See* Memorandum for William P. Tyson, Director, Executive Office for United States Attorneys, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Applicability of 10 U.S.C. § 973(b) to JAG Officers Assigned to Prosecute Petty Offenses Committed on Military Reservations* (May 17, 1983). In response to that decision, Congress amended section 973(b) to limit the offices that active duty military officers were prohibited from holding. *See* Department of Defense Authorization Act, Pub. L. No. 98-94, tit. X, sec. 1002(a), § 973(b)(2)(A), 97 Stat. 614, 655 (1983). Under the amended version, the prohibition on holding federal civilian offices applied, as it does today, only to an office that "is an elective office," that "requires an appointment by the President by and with the advice and consent of the Senate," or that "is a position in the Executive Schedule under sections 5312 through 5317 of title 5." *Id.* Congress also made clear that active duty officers assigned or detailed to federal civilian offices not covered by the prohibition could hold those offices or exercise their functions. *Id.* § 973(b)(2)(B). The legislative history of the 1983 amendment to section 973(b) confirms that the provision was narrowed in response to the OLC opinion. *See* S. Rep. No. 98-174, at 232–34 (1983); *see also* H.R. Rep. No. 98-352, at 233 (1983) (Conf. Rep.).[4] It

---

[4] As the Committee report explained:

> The Committee has been advised by the Department of Defense that the Assistant Attorney General, Office of Legal Counsel, of the Department of Justice, has recently issued an opinion that the practice of appointing military commissioned officers as Special Assistant United States Attorneys is now considered to offend the prohibitions of section 973(b) of Title 10, United States Code. However, that same opinion suggests that legislation be sought to amend section 973(b) to permit the continuation of this longstanding and successful practice. The Department of Defense has requested such legislation.

> Therefore, the Committee recommends a provision to amend section 973(b) of Title 10 to permit the continuation of this practice of utilizing military attorneys as Special Assistant United States Attorneys.

S. Rep. No. 98-174, at 233.

makes no mention of any intention to displace the prior understanding that section 5534a provides an exception to the general prohibition on military officers holding federal civilian offices.

In sum, the legislative history of the 1945 statute that was the predecessor to section 5534a indicates that the provision was intended to create an exception to the general prohibition on military officers holding civilian offices in the federal government that had been in force since 1870. Nothing in the history of subsequent amendments to the two provisions provides any basis to conclude that Congress intended these amendments to achieve a different result.

### C.

The conclusion that section 5534a provides an exception to the general prohibition of § 973(b)(2)(A) is also consistent with prior advice given by this Office. In a July 5, 1973 memorandum to the Attorney General, our Office considered whether the military appointment of General Alexander M. Haig, Jr., the Vice Chief of Staff of the Army, had terminated pursuant to section 973(b) when he "was called to the White House to assume many of the responsibilities formerly held by H.R. Haldeman." Memorandum for the Attorney General, from Robert G. Dixon, Jr., Assistant Attorney General, Office of Legal Counsel, *Re: Status of General Alexander M. Haig, Jr.* (July 5, 1973) (internal quotation marks omitted). The facts surrounding General Haig's service in the White House were not clear at the time the memorandum was written. Among other things, the Office did not know "whether the as yet undisclosed arrangement between the President and General Haig had the effect of placing the General on terminal leave." *Id.* at 9. The memorandum concluded, however, that even "[i]f the facts that are developed show that General Haig was put on terminal leave by the President acting in the capacity of Commander in Chief, it would appear that 10 U.S.C. 973(b) was not violated." *Id.* at 3. The memorandum explained that the Comptroller General (in the 1946 opinion discussed above) had "interpreted the act of November 21, 1945, 59 Stat. 584, now 5 U.S.C. 5534a, as exempting officers on terminal leave from the prohibition of what is now 10 U.S.C. 973(b)." *Id.* at 7 (citing 25 Comp. Gen. 677); *see also id.* at 9 ("[T]he Comptroller General has ruled, as shown above, that by virtue of 5 U.S.C. 5534a, military officers on terminal leave are not subject to the prohibitions of 10 U.S.C. 973(b).").

The Office later provided informal advice to the Department of Defense about whether a Vice Admiral who was willing to retire from the military could be appointed to a position in the Department of Interior before his active duty service concluded. Our Office "advised that 10 U.S.C. 973(b) would not be a barrier to the appointment if the Admiral were placed on terminal leave since 5 U.S.C. 5534a makes an exception to the prohibition on military officers holding civil office if they are on terminal leave." Memorandum to Files, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Inquiry from DOD on*

*exceptions to 10 U.S.C. 973(b)* (Oct. 30, 1973) (citing 25 Comp. Gen. 677 and 45 Comp. Gen. 180); *see also* Memorandum to Files, from Edward S. Lazowska, Office of the Assistant Solicitor General, *Re: Proposed Appointment of Major General Robert McGowan Littlejohn as War Assets Administrator* (July 2, 1946) (noting the restrictions on civilian federal employment imposed by section 1222 of the Revised Statutes, the predecessor to 10 U.S.C. § 973(b), but concluding that "as soon as General Littlejohn is placed on terminal leave pending his retirement from the Army he may accept appointment as Administrator . . . under the provisions of the act of November 21, 1945," the predecessor to 5 U.S.C. § 5534a).

Although these prior writings predated the 1983 amendment to section 973(b), we do not believe that that amendment—which narrowed the scope of section 973(b)—altered the provision in ways that are material to the question whether a military officer on terminal leave status is "otherwise authorized by law" to hold a covered civilian office.

### III.

For the foregoing reasons, we conclude that an active duty military officer on terminal leave who meets the requirements of 5 U.S.C. § 5534a may continue on terminal leave status after his appointment or election to a position covered by 10 U.S.C. § 973(b)(2)(A).

KARL R. THOMPSON
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*