**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1477
_____

In Re: LINEAR ELECTRIC COMPANY, INC.,

Debtor

COOPER ELECTRIC SUPPLY CO. and
SAMSON ELECTRICAL SUPPLY CO., INC.,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 2-15-cv-06429)
District Judge: Honorable Susan D. Wigenton

_____

Submitted under Third Circuit LAR 34.1(a)
on October 7, 2016

Before: SHWARTZ, COWEN and ROTH, <u>Circuit Judges</u>

(Opinion filed: March 30, 2017)

Michael Nord, Esquire
Michael J. Stafford, Esquire
Nord & DeMaio
190 State Highway 18
Turnpike Metroplex, Suite 201
East Brunswick, NJ 08816

Counsel for Appellants

Leonard C. Walczyk, Esquire
Wasserman, Jurista & Stolz
110 Allen Road
Suite 304
Basking Ridge, NJ 07920

Counsel for Appellee

O P I N I O N

**ROTH**, Circuit Judge:

This case concerns the relationship between the New Jersey Construction Lien Law and federal bankruptcy law. Under New Jersey law, if a supplier sells materials on credit to a construction contractor and the contractor incorporates those materials into property owned by a third party without paying the supplier, the supplier can file for a lien on the

third-party property.[1]  In essence, the supplier can step into the shoes of the contractor and collect a debt owed to the contractor from the third-party property owner in order to recoup what the contractor owes to the supplier.

The question this case presents is whether a supplier can file a construction lien under New Jersey law when the contractor has filed a petition for bankruptcy, which automatically stays any act to create or perfect any lien against the contractor's property.

The suppliers here argue that the construction liens did not attach to the contractor's accounts receivable but attached to the interests of the owners of the third-party properties; thus, creating the liens was not an act against the property of the bankruptcy estate.  On the other hand, the contractor contends that the creation of the liens was intended to collect the portion of the accounts receivable owed by the owners of the third-party properties to the contractor so that the creation of the liens was an act against the property of the bankruptcy estate.

The District Court set out in its opinion how, under New Jersey law, the value of the liens depended on the amount that the contractor owed to the suppliers under their contracts and on the value of the contractor's accounts

---

[1] This lien is called a "construction lien" under current New Jersey law, but in the past, New Jersey—like many other states—referred to this kind of lien as a "mechanic's lien." *See* N.J. Stat. Ann. § 2A:44A-1 *et seq.* (describing the New Jersey Construction Lien Law).  *See generally* 56 C.J.S. Mechanics' Liens § 1 *et seq.* (describing mechanic's liens).

receivable.  The District Court then affirmed the Bankruptcy Court's conclusion that the accounts receivable were part of the bankruptcy estate because they complied with the definition of property of the estate under 11 U.S.C. § 541 and because the ability of a supplier to create a construction lien depended on the existence of the bankrupt contractor's accounts receivable.[2]  For that reason, the Bankruptcy Court held that the automatic stay prevented filing the liens.  The District Court affirmed   We agree and will also affirm.

## I. Background

## A. Statutory Background

In order to understand the events in this case, some review of the New Jersey Construction Lien Law and of bankruptcy law is helpful.

## 1. New Jersey Construction Lien Law

Under New Jersey law, in general, "[a]ny contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price . . .."[3]  As relevant here, "[t]he lien shall attach to the interest of the owner or unit owner of the real property development . . .."[4]  The lien itself is "limited to the amount that [the owner] agreed in

---

[2] *See* N.J.S.A. § 2A: 44A-9.
[3] N.J. S. A. § 2A:44A-3(a).
[4] *Id.*

writing to pay, less payments made by or on behalf of that person in good faith prior to the filing of the lien."[5]

In general, an owner discharges a lien by paying into a lien fund, from which claimants recover what they are owed.[6] A "claimant" is "a person having the right to file a lien claim on real property pursuant to [the Construction Lien Law]."[7] The claimants themselves are split into different tiers. A "first tier claimant" is "a claimant who is a contractor."[8] A "second tier claimant" is "a claimant who is, in relation to a contractor: (1) a subcontractor; or (2) a supplier."[9]

Numerous limitations on the lien fund and lien claims exist. As relevant here, "the lien fund shall not exceed: in the case of a first tier lien claimant or second tier lien claimant, the earned amount of the contract between the owner and the contractor minus any payments made prior to service of a copy of the lien claim . . .."[10] In addition, generally, "no lien fund exists, if, at the time of service of a copy of the lien claim, the owner or community association has fully paid the contractor for the work performed or for services, material or equipment provided."[11] Finally, each claimant's claim is limited to "the unpaid portion of the contract price of the

---

[5] N.J. S. A. § 2A:44A-3(f).
[6] N.J. S. A. § 2A:44A-23(a) ("All lien claims established by judgment are valid claims that shall be concurrent and shall be paid as provided in subsection c. of this section.").
[7] N.J. S. A. § 2A:44A-2.
[8] *Id.*
[9] *Id.*
[10] N.J. S. A. § 2A:44A-9(b)(1).
[11] N.J. S. A. § 2A:44A-9(d).

claimant's contract for the work, services, material or equipment provided."[12]

In the allocation process, if there are both first and second tier claimants, the lien fund is allocated to first tier claimants "in amounts equal to their valid claims."[13] Thereafter, "[f]rom the allocation to each first tier lien claimant, amounts shall be allocated equal to the valid claims of second tier lien claimants whose claims derive from contracts with that first tier lien claimant."[14] If money is left over in a first tier claimant's allocation after the second tier claimants within that allocation are paid, then the first tier claimant receives the rest.[15] However, if there are only second tier claimants, "the lien fund for second tier lien claimants shall be allocated in amounts equal to that second tier's valid claims."[16] In any event, if the total claims exceed the maximum liability of the owner or the maximum allocation to a tier, the allocations are reduced pro rata to the allowable maximum.[17]

## 2. Bankruptcy Law

A debtor in need of relief may file a voluntary bankruptcy petition, which commences a bankruptcy case.[18] "The commencement of a [bankruptcy] case . . . creates [a

---

[12] N.J. S. A. § 2A:44A-9(a).
[13] N.J. S. A. § 2A:44A-23(c)(1).
[14] N.J. S. A. § 2A:44A-23(c)(2).
[15] *Id.*
[16] N.J. S. A. § 2A:44A-23(c)(4).
[17] N.J. S. A. § 2A:44A-23(c)(1), (2), (4).
[18] 11 U.S.C. § 301.

bankruptcy] estate" that generally consists of all of the property of the debtor.[19]  Filing the petition also automatically stays, among other things, "any act to create, perfect, or enforce any lien against property of the estate . . .."[20]  In general, we interpret the breadth of the stay broadly.[21]

### B. Factual and Procedural Background

Cooper Electrical Supply Co. and Samson Electrical Supply Co., Inc., sold electrical materials to Linear Electric Co., Inc., which Linear Electric incorporated into several construction projects.  As of July 1, 2015, the development owners had not fully paid Linear Electric for its work on these projects, and Linear Electric had not fully paid Cooper and Samson for their materials.[22]

---

[19] 11 U.S.C. § 541; *accord Law v. Siegel*, 134 S. Ct. 1188, 1192 (2014).

[20] 11 U.S.C. § 362(a)(4).

[21] *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001) ("§ 541(a)'s legislative history demonstrates that the language of this provision was intended to sweep broadly . . .."); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983) ("The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad.").

[22] Specifically, Linear Electric owed Cooper $1,234,100.48 and Samson $142,980.17 for electrical materials that Linear Electric had purchased.  Since that time, Cooper has been paid $257,026.63, and Samson has been paid $15,755.54. They have reduced their claims accordingly.

On July 1, 2015, Linear Electric filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Two weeks later, on July 15, Cooper and Samson filed construction liens on the developments into which Linear Electric had incorporated the materials that it had purchased from Cooper and Samson. On July 20, Linear Electric filed a motion with the Bankruptcy Court to discharge the liens as violating the automatic stay that resulted from the bankruptcy petition. On July 31, after hearing argument, the Bankruptcy Court granted the motion. Linear Electric then collected the full amounts owed to it by the development owners. On August 13, the Bankruptcy Court held that the construction liens were void *ab initio* for violation of the automatic stay. Linear Electric has continued to operate as a debtor-in-possession.

Cooper and Samson appealed the Orders of the Bankruptcy Court of July 31 and August 13, 2015. The District Court affirmed. Cooper and Samson then appealed to this Court.

**II. Discussion**[23]

Both parties raise procedural issues for the first time in this Court. Linear Electric argues that the case is moot, and Cooper and Samson argue that the Bankruptcy Court could not constitutionally resolve the issue in this case in the first

---

[23] The Bankruptcy Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1). The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 158. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

instance. We will address those issues before proceeding to the merits of this appeal.

## A. Mootness

When the Bankruptcy Court issued an order to discharge the construction liens, Cooper and Samson requested a stay but were not granted one. Linear Electric then collected full payment from the development owners. Linear Electric argues that, as a result, the value of the constructions liens is zero. Hence, Linear Electric concludes that this case is moot and subject to dismissal.

Linear Electric is correct that we generally cannot resolve a dispute once the dispute has become moot, even if mootness was not raised below (as it was not here).[24] "In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[25] Here, Cooper and Samson would have no cognizable interest in the liens if no money could be collected through them.

Furthermore, Linear Electric is correct that, under New Jersey law, payments from the development owners to Linear Electric could potentially reduce or eliminate the value that could be collected under the constructions liens. However, such payments do not always do so, and they do not do so

---

[24] *See Rendell v. Rumsfeld*, 484 F.3d 236, 240-41 (3d Cir. 2007).

[25] *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (internal quotation marks omitted) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)).

here. In general, the value of the lien, the lien fund, and any claimant's claim are all determined at the time of filing the lien or service of a copy of the lien claim.[26] Thus, payments from the development owners *after* the filing of the lien and the service of a copy of the lien claim do not reduce the value of the lien, the lien fund, or the lien claims.

Here, Linear Electric was paid in full after the Bankruptcy Court decision, which came after filing and service occurred. Thus, the payments to Linear Electric do not affect the amounts that Cooper and Samson would recover if the liens were proper. As we discuss *supra*, Cooper

---

[26] *See* N.J. S. A. § 2A:44A-9(b)(1) (providing that the lien fund shall not exceed "the earned amount of the contract between the owner and the contractor minus *any payments made prior to service of a copy of the lien claim*") (emphasis added); N.J. S. A. § 2A:44A-9(d) ("[N]o lien fund exists, if, *at the time of service of a copy of the lien claim*, the owner or community association has fully paid the contractor for the work performed or for services, material or equipment provided.") (emphasis added); N.J. S. A. § 2A:44A-3(f) (providing that the lien is "limited to the amount that [the owner] agreed in writing to pay, less payments made by or on behalf of that person in good faith *prior to the filing of the lien*") (emphasis added); N.J. S. A. § 2A:44A-8 (providing that the lien claim form subtracts "Amount Paid to Date" to find the "TOTAL LIEN CLAIM AMOUNT"); *see also Craig v. Smith*, 37 N.J.L. 549, 550-51 (N.J. 1875) ("to entitle the workman or materialman to an action against the owner, under the [New Jersey Mechanic's Lien Law], there must be a debt due from the owner to the contractor *at the time the notice is given*") (emphasis added).

and Samson, as creditors of Linear Electric, may recover some amount in relation to the lien amounts under the approved plan of liquidation. Moreover, in its Order of August 13, 2015, the Bankruptcy Court, while discharging the liens, recognized that the "filing of the Liens shall be deemed to have occurred on the date of each such filing and treated as notices under 11 U.S.C. § 546(b) for the purposes of determining whether (a) such Lien was timely filed under applicable state law and (b) any such Supplier is entitled to the protections of 11 U.S.C. § 546(b) or other applicable law." As a result, Cooper and Samson still have an interest in the outcome of this bankruptcy proceeding. The case is not moot.

## B. Constitutionality

Cooper and Samson argue that the Bankruptcy Court could not constitutionally enter an order invalidating the construction liens. Their argument is based on the limitations imposed by Article III of the Constitution. Article III vests "[t]he judicial Power of the United States" in the judicial branch, the judges of which "shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."[27] Because of this clause, "in general, Congress may not withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty."[28]

---

[27] U.S. Const. art. III, § 1.

[28] *Stern v. Marshall*, 564 U.S. 462, 484 (2011) (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)) (internal quotation marks omitted).

Hence, courts outside the scope of Article III—that is, courts, such as bankruptcy courts, whose judges do not have the life tenure and salary protection guaranteed to Article III judges—cannot conclusively resolve certain state common law claims between private parties without the consent of both parties.[29] However, Congress may assign cases involving "public rights" to non–Article III courts.[30] Public rights cases include "cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority."[31]

Cooper and Samson argue that the Bankruptcy Court here, as a non–Article III court, could not resolve any claim regarding their construction liens, because Cooper and Samson describe the rights at issue with regard to the construction liens as private rights that are entrusted to Article

---

[29] *Id.* at 493; *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84 (1982) (holding that the Bankruptcy Act of 1978 was unconstitutional in part because it allowed bankruptcy courts to adjudicate state common law claims); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1942 (2015) ("Our precedents make clear that litigants may validly consent to adjudication by bankruptcy courts.")

[30] *Stern*, 564 U.S. at 485.

[31] *Id.* at 484.

III courts.[32] However, Linear Electric brought claims alleging violations of the automatic stay imposed by the filing of its bankruptcy. Those claims arise under the federal bankruptcy laws.[33] As such, any rights at issue are rights created by Congress, and such rights are public rights.[34] Article III does not prevent a non–Article III court from resolving cases regarding public rights; thus, the Bankruptcy

---

[32] Linear Electric argues that this argument is waived because Cooper and Samson did not raise this issue below. However, waiver does not apply; we must consider this issue because it implicates the jurisdiction of the Bankruptcy Court and therefore our appellate jurisdiction. *See Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 401 (5th Cir. 2012); *see also In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1182 (3d Cir. 1996) (holding *sua sponte* that, because the bankruptcy court lacked jurisdiction, the case should be remanded to the bankruptcy court for dismissal); *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court").

[33] *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 481 (4th Cir. 2015) ("A claim under § 362(k) for violation of the automatic stay is a cause of action arising under Title 11, and as such, a district court has jurisdiction over it."); *see also In re Quigley Co., Inc.*, 676 F.3d 45, 52 (2d Cir. 2012) ("Enjoining litigation to protect bankruptcy estates during the pendency of bankruptcy proceedings, unlike the entry of the final tort judgment at issue in *Stern*, has historically been the province of the bankruptcy courts.").

[34] *See Stern*, 564 U.S. at 489 ("Congress may set the terms of adjudicating a suit when the suit could not otherwise proceed at all.").

Court could constitutionally determine whether the liens violated the automatic stay.

## C. The Construction Lien and the Automatic Stay

With regard to the ultimate question, whether the filing of the construction liens violated the automatic stay, we review *de novo* the legal conclusions of the Bankruptcy Court and the District Court.[35]

Linear Electric filed for bankruptcy on July 1, 2015, which stayed any act to create or perfect a lien on Linear Electric's property.[36] On July 15, Cooper and Samson filed their construction liens—an act to perfect the liens that, before then, were "inchoate merely."[37] The question we decide here is whether filing those liens violated the automatic stay. We hold that it did. As we will explain, the lien claim payment process allows Cooper and Samson to collect their recovery by subtracting it from Linear Electric's accounts receivable which are due for the value of the materials provided under the contracts. Thus, Cooper and Samson's lien was against Linear Electric's property. This analysis is consistent with the reasoning in numerous prior cases, in this Court and elsewhere, as well as with the purpose

---

[35] *In re Nortel Networks, Inc.*, 669 F.3d 128, 136-37 (3d Cir. 2011) ("We exercise plenary review of an order from a district court sitting as an appellate court in review of a bankruptcy court and we will review both courts' legal conclusions *de novo*.")

[36] *See* 11 U.S.C. § 362(a)(4).

[37] *Friedman v. Stein*, 71 A.2d 346, 349 (N.J. 1950).

14

of the automatic stay. Cooper and Samson's arguments to the contrary are unpersuasive.

**1. The Lien Claim Payment Process and Linear Electric's**

**Accounts Receivable**

The lien claim payment process makes clear that Cooper and Samson's liens were against Linear Electric's property—specifically, its accounts receivable. Under New Jersey law, if Linear Electric did not file its own lien claims alongside Cooper and Samson's,[38] the lien allocation would be as follows. Cooper and Samson would be second tier claimants, and the lien fund would be allocated in amounts equal to their valid claims.[39] Thus, Cooper and Samson would be fully paid, and the amount that Linear Electric is owed by the development owners would be reduced accordingly.[40] That is, on its balance sheet, Linear Electric's accounts receivable—which are an asset of Linear Electric—would be reduced by the amount paid to Cooper and Samson. In effect, the lien claim payment process would transfer a

---

[38] If Linear Electric did file its own lien claims alongside Cooper and Samson's, the effect would be much the same, with Linear Electric as a first tier claimant and Cooper and Samson as second tier claimants. *See* N.J. S. A. § 2A:44A-23(c)(1)-(2).

[39] N.J. S. A. § 2A:44A-23(c)(4).

[40] *See* N.J. S. A. § 2A:44A-12 ("Any . . . payment [of the amount of a lien claim to a lien claimant] made by the owner . . . shall constitute a payment made on account of the contract price of the contract with the contractor . . . against whose account the lien is filed.").

portion of an asset of Linear Electric to Cooper and Samson. Where, as here, a lien will be paid by transferring part or all of an asset from the bankruptcy estate to the lienholder, the lien is against the property of the bankruptcy estate. Thus, Cooper and Samson's filing to perfect their liens violated the automatic stay.

## 2. Prior Cases and Statutory Purpose

Both prior cases and the purpose of the automatic stay support the conclusion that we reach here. In *In re Yobe Electric, Inc.*,[41] the pertinent facts were analogous: A subcontractor filed a mechanic's lien, similar to the construction lien here, after a general contractor declared bankruptcy. However, in *Yobe*, the subcontractor filed the lien under Pennsylvania law, under which the date of filing the mechanic's lien related back to "the date of visible commencement upon the ground of the work of erecting or constructing the improvement."[42] Hence, the post-petition lien related back to a time before the petition and fell within an exception to the automatic stay.[43]

---

[41] 728 F.2d 207 (3d Cir. 1984).

[42] *Matter of Yobe Elec., Inc.*, 30 B.R. 114, 117 (Bankr. W.D. Pa. 1983) (quoting 49 Pa. Stat. Ann. § 1508(a)).

[43] *See* 11 U.S.C. § 546(b)(1)(A) ("[The automatic stay is] subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . ..").

The bankruptcy court in *Yobe*, in analysis that we approved,[44] distinguished two New Jersey cases in which filing a mechanic's lien *did* violate the stay.[45] New Jersey mechanic's liens were effective as of filing, and no relation back applied, so the liens in those two cases were post-petition liens and violated the stay.[46] The bankruptcy court distinguished those cases on the basis of the different state laws: Pennsylvania liens relate back, and New Jersey liens do not. This distinction would have been unnecessary, however, if the liens were not against property of the bankruptcy estate, because liens that are not against property of the bankruptcy estate are not subject to the automatic stay. If the liens were not against property of the bankruptcy estate, the New Jersey cases would have been wrong, not merely distinguishable, and the entire discussion of relation back would have been irrelevant.

Thus, *Yobe* supports the conclusion that we draw here. Its discussion implies that the liens were against the property of the bankruptcy estate, and it suggests that construction or mechanic's liens that do not fall within an exception to the

---

[44] We affirmed in a short opinion "on the basis of the well-reasoned opinion of the bankruptcy judge." *Yobe*, 728 F.2d at 208.

[45] *See Matter of Valairco, Inc.*, 9 B.R. 289 (Bankr. D.N.J. 1981); *In re Shore Air Conditioning & Refrigeration, Inc.*, 18 B.R. 643 (Bankr. D.N.J. 1982).

[46] *Yobe*, 30 B.R. at 117-18.

automatic stay by, for example, relating back to a pre-petition time—as the liens here do not[47]—violate the automatic stay.[48]

Also supporting our conclusion are numerous cases from other courts that have considered enforcement (rather than creation or perfection) of mechanic's liens in similar factual circumstances. In all of these cases, courts have either held or assumed that the liens are against the bankruptcy

---

[47] Since *Yobe*, New Jersey has repealed the Mechanic's Lien Law and replaced it with the Construction Lien Law. However, no party has suggested, and we cannot find any reason to believe, that any of the changes in the statute affect the outcome of the case. For example, none of the changes would make the liens relate back to a time before their filing.

[48] The exception to the automatic stay in 11 U.S.C. § 546(b)(1) is broader than relation back, *see In re 229 Main St. Ltd. P'ship*, 262 F.3d 1, 10-11 (1st Cir. 2001), but the exception does not apply here in any event. The exception generally provides that "if an interest holder against whom the trustee would have rights still has, under applicable nonbankruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee." *In re Grede Foundries, Inc.*, 651 F.3d 786, 791 (7th Cir. 2011) (quoting *Makoroff v. City of Lockport*, 916 F.2d 890, 891-92 (3d Cir.1990)) (internal quotation marks omitted). New Jersey law gives no such opportunity to Cooper and Samson.

estate's property interests.[49]  We agree:  The liens here were against Linear Electric's interests in property.

Finally, the purpose of the automatic stay supports our conclusion.   In a Chapter 11 bankruptcy such as Linear Electric's, a debtor proposes a plan of repayment "which divides claims against the debtor into separate 'classes' and specifies the treatment each class will receive."[50]   A plan typically specifies that at least some creditors will receive less than the full value that they were originally owed, because a bankrupt entity generally has inadequate assets to cover its liabilities.  A court will approve such a plan, even over the objections of the creditors, "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class

---

[49] *See, e.g.*, *In re Hunters Run Ltd. P'ship*, 875 F.2d 1425, 1427 (9th Cir. 1989) (rejecting the argument that a mechanic's lien "is not 'against the debtor' but is instead 'against the realty or security for the debt'"); *In re Baldwin Builders*, 232 B.R. 406, 412-13 (B.A.P. 9th Cir. 1999) (holding that post-petition commencement of a mechanic's lien foreclosure action by a subcontractor violates the automatic stay from a general contractor's bankruptcy petition); *In re Concrete Structures, Inc.*, 261 B.R. 627, 643 (E.D. Va. 2001) (rejecting the argument that "a suit to enforce a mechanic's lien is an action *in rem*" rather than "against the *debtor*"); *In re Richardson Builders, Inc.*, 123 B.R. 736, 741 (Bankr. W.D. Va. 1990) ("[W]hen a general contractor files a bankruptcy petition, [§] 362(a) stays the filing and prosecution of mechanic's lien enforcement actions by subcontractors.").

[50] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2069 (2012).

of claims or interests that is impaired under, and has not accepted, the plan."[51] The purpose of the automatic stay is to give breathing room for the development of such a plan.[52]

Here, if Cooper and Samson were allowed to receive full repayment via New Jersey's Construction Lien Law, they would be fully repaid, and Linear Electric would receive less as a result. Thus, there would be less total money to go into the plan of repayment, and other creditors of Linear Electric would suffer. Cooper and Samson would be effectively circumventing the bankruptcy case in order to unfairly advantage themselves at the expense of other creditors. For better or for worse, the automatic stay requires that Cooper and Samson wait as Linear Electric's bankruptcy case proceeds and receive whatever they will receive under bankruptcy law without resort to other mechanisms to claim greater payments.

### 3. Cooper and Samson's Arguments

Cooper and Samson argue that their liens did not violate the automatic stay because the liens attached to the property interests of the development owners and did not

---

[51] 11 U.S.C. § 1129(b)(1).

[52] *In re VistaCare Grp., LLC*, 678 F.3d 218, 231 (3d Cir. 2012) ("[The automatic stay's] primary purpose was to give the debtor a 'breathing spell' from creditors, to allow the debtor to begin the process of discharging his debts, and where applicable, to develop a repayment or reorganization plan").

attach to the interests of Linear Electric.[53] Therefore, they conclude, the liens were proper. However, their argument is not persuasive. First of all, we agree with the cogent reasoning of the District Court that liens were against Linear Electric's accounts receivable. Futhermore, the stay applies to any lien "against" Linear Electric's interests in property, not solely those that "attach" to Linear Electric's interests in property,[54] and the Construction Lien Law expressly contemplates that a lien may be against something to which it does not attach. For example, it refers to "the contractor or subcontractor *against* whose account the lien is filed . . .."[55] Hence, the text of the Construction Lien Law provides no reason to believe that the liens are not *also* against Linear Electric's accounts receivable (in addition to attaching to the development owners' real property interests).

---

[53] *See* N.J. S. A. § 2A:44A-3(a) (providing that a construction lien "shall attach to the interest of the owner or unit owner of the real property development"). Cooper and Samson contrast this wording with New Jersey's Municipal Mechanic's Lien Law, which allows public contractors to file a lien upon "moneys" of the public agency that hired the contractor under circumstances similar to those in which a private contractor could file a construction lien. *See* N.J. S. A. § 2A:44-128(a).

[54] "Attach" and "against" are not synonyms. *Compare* Black's Law Dictionary 152 (10th ed. 2014) (defining "attach") *with* Merriam-Webster's Collegiate Dictionary (11th ed.), *available at* http://www.merriam-webster.com/dictionary/against (defining "against").

[55] N.J. Stat. Ann. § 2A:44A-12 (emphasis added).

Cooper and Samson also argue that their liens may not have been against Linear Electric's interests in property because Linear Electric may have had no interests in the debts from the development owners. Cooper and Samson suggest that the contracts between Linear Electric and the development owners, which were never submitted into evidence, may have provided that Linear Electric's paying its suppliers was a condition precedent to Linear Electric's right to repayment for its construction work. Cooper and Samson allege that such a provision is standard throughout the industry. They argue that if this provision were part of the contract, then Linear Electric would have no property interest in anything from the development owners, so the liens would not violate the automatic stay. Hence, they request a remand for contract interpretation. However, their argument is mistaken on a crucial point of law. New Jersey's Construction Lien Law provides that the value of the lien fund cannot exceed the amount that the owner actually owed the contractor at the time of filing or service.[56] Thus, if the contract provides as Cooper and Samson have suggested and if, as a result, Linear Electric has no right to repayment from the development owners, then the value of the lien fund is zero. In such circumstances, the Bankruptcy Court would have been correct to order the liens discharged. Cooper and Samson therefore have provided no reason to remand this case.

---

[56] *See* N.J. S. A. § 2A:44A-9(b)(1) (providing that the lien fund shall not exceed "the earned amount of the contract between the owner and the contractor").

### III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.