**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2164
_____

In re: 38-36 GREENVILLE AVE LLC,
Debtor

KEVIN KERVENG TUNG, P.C.,
Appellant

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 2-20-cv-03563)
District Judge:  Honorable Madeline C. Arleo

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 14, 2022

Before:   AMBRO, JORDAN and SCIRICA, *Circuit Judges*

(Filed:  April 19, 2022)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

This case highlights the famous first law of holes: when you're in one, stop

digging.  The appellant here, a law firm representing a small, limited liability company in

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

a bankruptcy matter, ignored that law, and a few others, to its shame. The U.S.

Bankruptcy Court for the District of New Jersey ordered the disgorgement of fees paid to

the firm, denied its request for further payment from the bankrupt debtor's estate, and

referred the firm's principal to the District Court for possible disciplinary action. The

District Court upheld the Bankruptcy Court's order, and so do we.

## I.    BACKGROUND

In March 2016, 38-36 Greenville Ave LLC (the "Debtor") filed a petition for relief

under Chapter 11 of the Bankruptcy Code (the "Code") in the U.S. Bankruptcy Court for

the District of New Jersey. It did so with the aid of its counsel, Kevin Kerveng Tung, and

his law firm, Kevin Kerveng Tung, P.C. ("KKT"). The Debtor is a single-member

limited liability company wholly owned by Lingyan Quan. Aside from a few thousand

dollars in cash and accounts receivable, its only asset is a multi-family dwelling in New

Jersey, and its sole creditors are Armando and Melinda Flores, who hold approximately

$1.85 million in judgment liens arising out of a state-court judgment.[1] Simultaneous with

the Debtor's petition, KKT filed a statement of compensation, pursuant to § 329(a) of the

---

[1] Prior to the Debtor's bankruptcy, the Floreses brought tort claims against the Debtor and its employee, a non-party to this matter, in the Superior Court of New Jersey. In November 2015, the jury found the Debtor jointly and severally liable for the employee's tortious conduct and awarded the Floreses approximately $1.85 million in compensatory damages. The Debtor appealed in December 2015 but was unable to post the bond necessary to stay enforcement of the judgment pending appeal. *See* N.J. R. Ct. 2:9-6. Instead, the Debtor "came to the bankruptcy court for help as its last hope and resort." (Opening Br. at 3.) The Debtor's petition "automatically stay[ed], among other things, 'any act to create, perfect, or enforce any lien against property of the estate[.]'" *In re Linear Elec. Co.*, 852 F.3d 313, 317 (3d Cir. 2017) (quoting 11 U.S.C. § 362(a)(4)).

Code and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, disclosing receipt of a $3,000 retainer payment by the Debtor.

The Debtor then filed an application under § 327(a) of the Code (the "Retention Application"), seeking permission to retain KKT as counsel in the Chapter 11 proceedings. The Retention Application stated that KKT's services were necessary because the Debtor had previously had KKT as its defense counsel in the state-court action brought by the Floreses, so KKT was "fully knowledgeable" of "the debtor's situation." (App. at 121.) It further represented that KKT had "rich experience in bankruptcy[.]" (App. at 121.)

Additionally, the Retention Application disclosed the parties' compensation arrangement and declared that, other than the $3,000 retainer, no other agreement had been made between KKT and the Debtor, or anyone acting on either party's behalf. It also certified that KKT would comply with applicable bankruptcy laws and court procedures when applying for compensation. Lastly, it stated that KKT was disinterested and neither held nor represented an interest adverse to the Debtor or the Debtor's estate under § 327(e) of the Code. The Bankruptcy Court approved the Retention Application and ordered that KKT be paid "in such amounts as may be allowed by the Court upon proper application(s) therefor." (App. at 129.)

Not long after, the Debtor asked the Bankruptcy Court to lift the automatic stay on its appeal of the state-court judgment and, in the meantime, to hold the bankruptcy proceeding in abeyance. The Court denied that request, concluding that the Debtor "was using the bankruptcy case as a substitute for posting a *supersedeas* bond … , as required

3

under state law[,]" without first "attempt[ing] to pay or obtain a waiver of the bond requirement." (App. at 988-89.)

A year into the proceeding, the Debtor had yet to file a Chapter 11 disclosure statement and plan, so the Bankruptcy Court *sua sponte* ordered the parties to show cause why the proceeding should not be dismissed or converted into a Chapter 7 liquidation. The United States Trustee then became involved. The Trustee argued that the proceeding lacked a valid reorganizational purpose and should be dismissed entirely as a bad faith bankruptcy filing. [App. at 381-82 (citing 11 U.S.C. §§ 349, 1112(b)(1)).] The Floreses argued for conversion into a Chapter 7 liquidation so that they could enforce their judgment liens. The Debtor admitted that "the only reason [it] filed the instant bankruptcy [was] to secure a stay so that [it could] pursue its appeal in State Court without losing the property at issue." (App. at 393.) Because it had not been successful in securing that relief, it sought dismissal of its Chapter 11 case.

At the hearing on the order to show cause, Tung, appearing on behalf of both the Debtor and his firm, KKT, "conceded that the Debtor failed to file a plan and disclosure statement and … that it would be futile for the Debtor to do so." (App. at 990.) The Bankruptcy Court refused to dismiss the case because it believed it was in the best interest of the creditors and the estate to instead convert the case to a Chapter 7 liquidation and appoint a trustee to manage the estate. The Court proceeded to take those steps, and soon the Chapter 7 Trustee moved to sell the Debtor's only known asset, the multi-family house. The Court approved the property's public sale for $725,000 two months later.

4

It was not until after the Chapter 7 conversion, and over a year and half after the Debtor declared bankruptcy, that KKT filed its first and only fee application (the "Fee Application"). In the Fee Application, KKT sought payment of $31,819 in fees and expenses from the Debtor. Notably, the Fee Application also disclosed that KKT, without Bankruptcy Court approval, had already received payments totaling $19,400 from the "personal bank account" of Quan – the Debtor's sole shareholder – as "pre-payment for the legal services rendered" to the Debtor. (App. at 481.) KKT thus requested that the Court approve its fees so that it could pay Quan back. Both the Chapter 7 Trustee and the Floreses objected to the Fee Application, arguing, among other things, that the previously undisclosed payments violated the Code and the Bankruptcy Rules.

At the Fee Application hearing, Tung repeatedly evaded the Bankruptcy Court's questions regarding Quan's undisclosed payments. At first, he attempted to characterize the payments as something other than an unauthorized loan incurred by the Debtor. When pressed, he admitted that the payments were indeed a loan, only to reverse course after the Bankruptcy Court reminded him that any debt incurred by the Debtor had to be pre-approved by the Court. He also conceded that KKT intentionally omitted the payments from the Debtor's Monthly Operating Reports, in violation of §§ 704(a)(8) and 1106(a)(1) of the Code, because, if the Debtor had owed post-petition money for legal fees, then "the monthly operati[ng] report[s] most likely [would have] go[ne] negative[,] [a]nd at the time [they] were talking about reorganization[.]" (App. at 651.) In other

5

words, KKT intentionally withheld required information and did so to mislead the Court and avoid either the conversion or the dismissal of the case.

Rightly concerned, the Bankruptcy Court issued a second order for KKT and Tung, in his individual capacity, to show cause why the Court should not sanction them for violations of the New Jersey Rules of Professional Conduct, the Code, and the Bankruptcy Rules. It also asked, among other things, why it should not deny KKT's fee application in its entirety, require KKT to disgorge attorney's fees previously paid, and find that KKT was not disinterested in its representation. KKT and Tung responded that their conduct had not violated any legal or ethical obligations. KKT also contended, among other things, that acceptance of legal fees from Quan was not a per se violation of § 327(a) of the Code, that it made the appropriate disclosures in its Fee Application under Bankruptcy Rule 2016, and that there was no conflict of interest because the interests of Quan and the Debtor are united.

At the hearing on the second order to show cause, Tung, again speaking on behalf of both KKT and himself, first argued that the failure to timely disclose the payments was merely a "technical failure to disclose, … [which] shouldn't warrant any sanctions." (App. 874.) He then changed his tune, saying he did not believe KKT needed to disclose anything about the payments until it filed the Fee Application. Even after he finally agreed that earlier disclosure was required, he gave a series of contradictory responses on

6

how the undisclosed payments should be characterized.[2]  The Bankruptcy Court said that

Tung "really, really [did not] understand the laws that govern a bankruptcy proceeding,"

and, rather than show contrition for his mistakes, was "very defensive, flip flopping in

[his] statements, … and … unhelpful[.]"  (App. at 932-33.)

The Court denied with prejudice the Fee Application and ordered the payments to

KKT to be disgorged to the estate (the "Fee Order").  It determined that KKT and Tung

failed to make timely and adequate disclosures under Rules 2014 and 2016, and had

"purposefully and strategically decided to omit pertinent information from the [Monthly

Operating Reports.]"  (App. at 1010.)  The Court thus concluded they had violated their

duty of candor under New Jersey Rule of Professional Conduct 3.3.  In light of those

violations, the Court found it unnecessary to decide whether an actual conflict of interest

arose.  Lastly, because of the egregiousness of counsel's conduct, the Court referred the

case to the Chief Judge of the District Court for potential disciplinary action.

KKT appealed to the District Court, arguing that the Bankruptcy Court, as a non-

Article III court, lacked jurisdiction to order disgorgement of KKT's fees and, even if it

---

[2] Each time the negative implications of his proposed characterization became apparent, Tung would change his response: The undisclosed payments were "definitely not a loan" (App. at 879); they "could be characterized" as an infusion of capital (App. at 879); "the assumption should be [that they were] not [an] infusion of capital" (App at 928); they were an "investment" (App. at 880); they "w[ere]n't treated as [an] investment" (App. at 890); they "could be" a gift to the debtor (App. at 889-90); "[n]obody said to me it was a gift" (App. at 890); "[i]t's a gift" (App. at 928); "I'm not saying it's a gift" (App. at 929); "I withdraw that statement [that it was a gift]" (App. at 929); "[i]t was money paid on behalf of the debtor …, legally speaking, by a third party" (App. at 890); and "[a]nything could have happened" (App. at 892).

had the authority to do so, that it abused its discretion in issuing the Fee Order. The

District Court rejected both arguments. It held that disgorgement was within the

Bankruptcy Court's jurisdiction under *Stern v. Marshall*, 564 U.S. 462 (2011), as "these

proceedings were core and flowed directly from the bankruptcy scheme[.]" (App. at 16.)

And because KKT breached its disclosure obligations, the District Court said that the

Bankruptcy Court was well within its discretion to order disgorgement and deny the Fee

Application.[3] Finally, the District Court struck from the record, as irrelevant and

meritless, a supplemental letter filed by KKT alleging that the Bankruptcy Judge was

improperly biased in the Debtor's bankruptcy. The basis of the allegation was a

photograph taken of the Judge with the Chapter 7 Trustee at a New Jersey Bankruptcy

Lawyers Foundation event.

## II.   DISCUSSION[4]

KKT raises the same arguments before us that have already been rejected. It says

that the Bankruptcy Court lacked constitutional authority to order the disgorgement to the

---

[3] The District Court also affirmed the Bankruptcy Court's holding that KKT violated New Jersey Rule of Professional Conduct 3.3 and, like the Bankruptcy Court, found it unnecessary to address whether there was an actual conflict of interest between KKT and the Debtor.

[4] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(a) and (b) and 1334(a). The District Court had jurisdiction to review the appeal under 28 U.S.C. § 158(a), and we have jurisdiction to review that final decision pursuant to 28 U.S.C. § 158(d)(1). In doing so, we "'stand in the shoes' of the District Court and … review the Bankruptcy Court's legal conclusions de novo and its factual findings for clear error." *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (en banc) (citations omitted).

estate of fees paid by Quan, that the Bankruptcy Court abused its discretion in issuing the Fee Order, and that the District Court should not have struck KKT's post-briefing filing accusing the Bankruptcy Judge of bias. None of that has the slightest merit.

KKT argued for the first time in the District Court that, under *Stern*, the Bankruptcy Court lacked authority to order disgorgement of the post-petition, unauthorized fee payments, because it is not an Article III court. It stated that the payments underlying the disgorgement were "non-core" because they were made by a third party and are not part of the estate. (Opening Br. at 17-18.) KKT's reliance on *Stern* is misplaced.

In *Stern*, the Supreme Court determined that a bankruptcy court could not adjudicate state-law tort claims that were "in no way derived from or dependent upon bankruptcy law" because they "exist[] without regard to any bankruptcy proceeding." 564 U.S. at 499. As we have since explained, "*Stern* made clear that non-Article III bankruptcy judges do not have the constitutional authority to adjudicate a claim that is exclusively based upon a legal right grounded in state law[.]" *In re One2One Commc'ns, LLC*, 805 F.3d 428, 433 (3d Cir. 2015). Unlike the tort claims at issue in *Stern*, the payment of legal fees is "based on a federal bankruptcy law provision with no common law analogue, so the *Stern* line of cases is plainly inapposite." *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 423 (3d Cir. 2013); *see also In re Frazin*, 732 F.3d 313, 321 (5th Cir. 2013) (treating the award of fees as constitutionally within bankruptcy court's jurisdiction). Violations thereof are thus appropriately policed through equitable remedies fashioned by the Bankruptcy Court. *See In re Lewis*, 113 F.3d 1040, 1046 (9th

9

Cir. 1997) ("The bankruptcy court may order the disgorgement of any payment made to an attorney representing the debtor in connection with a bankruptcy proceeding, irrespective of the payment's source."); *In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989) ("[A]ny payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment."). The fees paid by Quan were to the benefit of the estate and thus were core matters within the Bankruptcy Court's purview. *See* 11 U.S.C. § 541(a)(7) (Property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case.").

KKT next asserts that, even if the Bankruptcy Court possessed authority to order disgorgement, it abused its discretion by entering the Fee Order, which ordered disgorgement and denied KKT's Fee Application. The word "chutzpah" comes to mind. KKT's repeated violations of the Bankruptcy Rules and the Code, along with counsel's lack of candor, more than justified entry of the Fee Order. *See In re Bressman*, 327 F.3d 229, 240 (3d Cir. 2003) (indicating that "a bankruptcy court may order the disgorgement of fees received by an attorney when he or she has ignored reporting and court approval duties imposed by the Code"); *In re Downs*, 103 F.3d 472, 479 (6th Cir.1996) (holding that the bankruptcy court has inherent authority to "deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement").

We reiterate that the Code and associated Rules impose a rigorous structure of oversight on a debtor, its professionals, and the estate. At the heart of that structure is a

baseline presumption – and an expectation – of disclosure and candor. *See, e.g.*, Fed. R. Bankr. P. 2014(a) (requiring counsel to disclose "any proposed arrangement for compensation"); Fed. R. Bankr. P. 2016(b) (requiring that compensation be disclosed "within 14 days after any payment or agreement not previously disclosed"); 11 U.S.C. § 329(a) (requiring comprehensive disclosure of payments in connection with bankruptcy); *id.* § 330(a) (requiring counsel to file fee applications when seeking payment for services rendered). KKT flouted those obligations, and we will not disturb the Bankruptcy Court's well-justified response.

Lastly, though it is hardly worthy of response, we dispose of KKT's argument that a photograph of the Bankruptcy Judge and the Chapter 7 Trustee, taken at a New Jersey Bankruptcy Lawyers Foundation event, somehow evidences judicial bias. It does not, and the District Court did not abuse its discretion by striking KKT's supplemental letter as "wholly irrelevant and without merit." (App. at 19.) *See Meditz v. City of Newark*, 658 F.3d 364, 367 n.1 (3d Cir. 2011) ("We review the District Court's decision denying the motion to strike for an abuse of discretion.").

## III. CONCLUSION

Because there is no reason to question the Bankruptcy Court's handling of the sad situation created by KKT and its principal, Mr. Tung, we will affirm the order of the District Court, thus affirming the underlying Fee Order.