# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

MILNE v ROBINSON

Docket No. 164190. Argued on application for leave to appeal October 4, 2023. Decided March 20, 2024.

Rebecca Milne, as personal representative of the estate of her daughter, Riley Robinson, sued Larry Robinson, Sr., Riley's grandfather, and Ann Robinson, Riley's grandmother, in the Missaukee Circuit Court, alleging that defendants were negligent and therefore responsible for Riley's death. Riley died at the age of 12 while riding an off-road recreational vehicle (ORV), owned by defendants, with her 14-year-old sister on land owned by defendants. Defendants moved for summary disposition, asserting that plaintiff's negligence claim was barred by the recreational land use act (RUA), MCL 324.73301, and that plaintiff had failed to plead that defendants were grossly negligent as required by the RUA. Plaintiff sought to amend her complaint to add a claim of gross negligence against Larry only and a claim under MCL 257.401(1), the owner-liability provision of the Michigan Vehicle Code, MCL 257.1 *et seq*., also against Larry only. The trial court, William M. Fagerman, J., granted summary disposition for defendants, holding that the RUA was applicable and precluded plaintiff's negligence claim as a matter of law. The court also denied plaintiff's motion to amend her complaint. Plaintiff appealed, challenging the trial court's conclusion that the RUA applied to the owner-liability claim against Larry in her proposed amended complaint. The Court of Appeals, MURRAY, C.J., and MARKEY and RIORDAN, JJ., affirmed, holding that both the owner-liability provision and the RUA applied to the facts of the case, but the RUA governed because it was the more specific provision. 339 Mich App 682 (2021). Plaintiff did not argue that the trial court erred by granting Ann's motion for summary disposition, so the Court of Appeals deemed that argument abandoned. Plaintiff sought leave to appeal with respect to the owner's liability claim against Larry in her proposed amended complaint. The Michigan Supreme Court ordered and heard oral argument on the application. 510 Mich 947 (2022).

In a per curiam opinion signed by Chief Justice CLEMENT and Justices ZAHRA, BERNSTEIN, CAVANAGH, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

The RUA limits a vehicle owner's liability such that an owner-liability claim under MCL 257.401(1) for injuries to a person engaged in recreational activity on the landowner's property must be based on the landowner's gross negligence or willful and wanton misconduct. Because plaintiff did not challenge on appeal the trial court's conclusion that there was no factual support

for a finding that Larry was grossly negligent, the trial court correctly granted Larry's motion for summary disposition and denied plaintiff's motion to amend her complaint.

1. Two questions had to be answered in order to resolve this case: (1) Does the RUA, viewed in isolation, apply to the facts? and (2) If so, does the RUA limit an owner-liability claim under MCL 257.401(1)? Regarding the first question, the RUA was applicable to this case. Under MCL 333.73301(1), no cause of action arises for injuries to a person who is injured on the land of another without paying valuable consideration to the owner of the land for the purpose of fishing, motorcycling, snowmobiling, or other outdoor recreational uses. Plaintiff conceded that riding an ORV was an "other outdoor recreational use," in that it was similar to motorcycling and snowmobiling. But plaintiff argued that the RUA only limits a landowner's potential common-law premises liability. This argument was contrary to the language of the statute. The statute limits liability for a cause of action under the specified circumstances, and this language is not limited to a cause of action for common-law premises liability. That the statute applies to categories of persons who are frequently involved in premises-liability actions does not mean that the statute is limited to such claims. Notably, other parts of the same section of the statute contain language that more specifically precludes liability unless the person's injuries were caused by a condition that involved an unreasonable risk of harm. Because plaintiff's action was for injuries to a person, it clearly fell within the scope of the RUA.

2. Answering the second question required a determination of how the RUA and the owner-liability provision interact. The RUA is a liability-limiting statute that eliminates a landowner's liability for negligence when applicable and leaves liability only for gross negligence and willful and wanton misconduct. By contrast, owner liability under MCL 257.401(1) is statutorily created vicarious liability, i.e., liability is not premised on any fault or negligence by the vehicle's owner, but the vehicle's owner may be liable on the basis of another's negligent operation of the vehicle if the vehicle was driven with the owner's express or implied consent or knowledge. These statutes conflict when a defendant is both the landowner of the property where a listed recreational activity occurred and the owner of the vehicle that was used for the activity. Under the RUA, Larry would not be liable for the decedent's injuries on the basis of his status as a landowner unless he was grossly negligent. But under the owner-liability provision, Larry could be liable, regardless of whether he was negligent, because he owned the vehicle.

3. Although the Court of Appeals resolved this conflict by applying the general/specific canon, the canon was not helpful here because it did not aid in discerning how the Legislature intended for the two provisions to interact. The statutes did not relate to the same subject matter or share a common purpose, such that they should be read *in pari materia*. The primary purpose of the RUA is to encourage private-land owners to make their land available to the public for recreational purposes by limiting their liability, while the purpose of the owner-liability provision is to place the risk of damage or injury on the person who has ultimate control of the vehicle if negligent driving of that vehicle causes an injury. Further, neither of the two statutes address a subset of situations that is covered more broadly by the other.

4. Instead of applying the general/specific canon, three other considerations indicated that the Legislature intended the RUA to limit an owner-liability claim. First, Michigan's owner-liability statute has been in almost continuous effect since it was enacted in 1909, whereas the

RUA was enacted in 1953. That a claim for owner liability was longstanding when the RUA was enacted supports the conclusion that the Legislature intended that the RUA limit owner liability in some circumstances. Second, the RUA does not contain an exception for owner liability, although it contains many other qualifications and limitations on its applicability. Given this, there is no basis to presume that the Legislature intended an additional implicit limitation. Third, application of the RUA when a landowner's vehicle is used for recreational purposes on their property would not entirely eliminate potential owner liability. Rather, applying the RUA would require a plaintiff alleging a claim under MCL 257.401(1) to show that their injuries were caused by the gross negligence or willful and wanton misconduct of the landowner who owned the vehicle at issue. Although, under this interpretation, the owner-liability provision is effectively amended from a vicarious-liability statute to one requiring fault, it gives the owner-liability provision at least some effect under these limited circumstances. By contrast, holding that the owner-liability provision applies without regard to the RUA would render the RUA entirely ineffectual in certain circumstances when, under its plain language, it would otherwise be applicable. Therefore, the Legislature intended the RUA to limit owner liability under MCL 257.401(1), and this reading gives optimal effect to both statutes.

Affirmed.

Justice VIVIANO, concurring in the result only, disagreed with the majority opinion's reasoning and agreed with the Court of Appeals that the conflict between the owner-liability provision and the RUA was properly resolved by applying the general/specific canon. He noted that the canon was applicable to resolve conflicting statutory provisions that were enacted at different times, as here, and that it was not a condition precedent to application of the canon that the statutes be *in pari materia*. Rather, two statutes need only have enough overlapping subject matter to irreconcilably conflict when applied in a given case. In this case, the RUA was clearly the more specific statute and when applied, Larry could not be liable for a claim of ordinary or imputed negligence.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED March 20, 2024

S T A T E   O F   M I C H I G A N

SUPREME COURT

REBECCA MILNE, Personal
Representative of the ESTATE OF RILEY
ROBINSON,

      Plaintiff-Appellant,

v                                 No. 164190

LARRY ROBINSON, SR.,

      Defendant-Appellee,

and

ANN ROBINSON,

      Defendant.

BEFORE THE ENTIRE BENCH

PER CURIAM.

Under the recreational land use act (RUA), MCL 324.73301(1), a landowner,[1] in certain circumstances, is only liable for injuries to a person engaged in recreational activity on their property if that injury was caused by the landowner's gross negligence or willful and wanton misconduct. The issue here is whether this limitation on liability applies when the landowner owns a vehicle that they allow a person to use for recreational purposes on their property and the negligent operation of that vehicle causes an injury. See MCL 257.401(1). We agree with the Court of Appeals that the RUA applies to such a claim and that, on these facts, the trial court properly denied plaintiff's motion to amend her complaint to add a claim under MCL 257.401(1) (the "owner-liability provision") of the Michigan Vehicle Code, MCL 257.1 *et seq*. However, we disagree with the Court of Appeals' application of the general/specific canon of statutory interpretation in reaching that conclusion. Accordingly, we affirm, albeit with different reasoning.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case primarily raises a question of law, so only a brief factual recitation is necessary. Plaintiff, Rebecca Milne, is the personal representative of the estate of her daughter, Riley Robinson, who died in an ORV[2] accident. At the time of the accident, 12-year-old Riley and her 14-year-old sister, Payton Robinson, were riding an ORV owned by

---

[1] The RUA applies to "owner[s], tenant[s], or lessee[s]" of land, MCL 324.73301(1), but this opinion will refer only to "landowners" for ease of reference.

[2] An ORV is defined, in relevant part, as a "motor-driven off-road recreation vehicle capable of cross-country travel without benefit of a road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain. . . . An ATV [all-terrain vehicle] is an ORV." MCL 324.81101(u).

their grandfather, defendant Larry Robinson, Sr., on his land. During the ride, an accident occurred that resulted in Riley's death.

Plaintiff sued, alleging that defendant was liable for Riley's death because he was negligent.[3] Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that the negligence claim was barred by the RUA and that plaintiff failed to plead or demonstrate that he was grossly negligent. Plaintiff responded that her claim could proceed under the owner-liability provision of the Michigan Vehicle Code, MCL 257.401(1), and she sought to amend her complaint to specifically state such a claim. She also sought to amend her complaint to add a claim of gross negligence. The trial court granted defendant summary disposition under MCR 2.116(C)(10), holding that the RUA applied and precluded plaintiff's negligence claim as a matter of law. The court also denied plaintiff's motion to amend the complaint as futile, holding that her proposed owner-liability claim was precluded by the RUA and that the record did not support a finding that defendant was grossly negligent.

Plaintiff appealed, arguing only that the RUA did not apply to her owner-liability claim. Plaintiff does not contest on appeal the trial court's holding that there was no support for a finding that defendant was grossly negligent. The Court of Appeals affirmed, holding that both the owner-liability provision and the RUA applied on these facts but that the RUA governs because it is the more specific provision. *Milne v Robinson*, 339 Mich

---

[3] Plaintiff also named Riley's grandmother—Ann Robinson—as a defendant in the original complaint. Ann, however, is not an appellee here because plaintiff's proposed amended complaint, which is at issue in this opinion, sought to add counts against Larry only. Accordingly, we use the singular term "defendant" for ease of reference.

3

App 682; 984 NW2d 844 (2021). Plaintiff sought leave to appeal in this Court, and we ordered oral argument on the application. *Milne v Robinson*, 510 Mich 947 (2022).[4]

## II. STANDARD OF REVIEW

We review de novo questions of statutory interpretation and whether a trial court properly granted summary disposition. *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 34; 878 NW2d 799 (2016). A trial court's decision on a motion to amend the pleadings is generally reviewed for an abuse of discretion. See *Kostadinovski v Harrington*, 511 Mich 141, 149; 999 NW2d 318 (2023). However, "[a] trial court necessarily abuses its discretion when it makes an error of law." *Id*. at 149-150 (quotation marks and citation omitted). In this case, the trial court's decision to deny plaintiff's motion to amend the complaint was based, in relevant part, on a legal conclusion that the RUA applies on these facts and limits a claim under the owner-liability provision. Therefore, we effectively review the trial court's decision to deny plaintiff's motion to amend the complaint de novo. See *Gunsell v Ryan*, 236 Mich App 204, 208; 599 NW2d 767 (1999).

---

[4] This Court directed the parties to address:

> (1) Whether the owner's liability provision of the Motor Vehicle Code, MCL 257.401(1), irreconcilably conflicts with the Recreational [Land] Use Act, MCL 324.73301(1), as to the appellee's liability for the decedent's injury; (2) whether the pertinent inquiry in resolving the apparent statutory conflict in this case is to determine which provision is more specific; and (3) if so, what is the appropriate framework for determining which provision is more specific? [*Milne*, 510 Mich at 947.]

4

## III. ANALYSIS

This Court must answer two basic questions to resolve this case: (1) Does the RUA, viewed in isolation, apply on these particular facts? and (2) If so, does it limit an owner-liability claim under MCL 257.401(1)?

Regarding the first question, we agree with the trial court and the Court of Appeals that the RUA applies here. MCL 324.73301(1) provides:

> Except as otherwise provided in this section, a cause of action does not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee.

Plaintiff essentially concedes that riding an ORV is an "other outdoor recreational use or trail use" under the RUA because it is similar to "motorcycling" and "snowmobiling," which are explicitly listed recreational activities in the statute. *Id*.[5] Moreover, plaintiff does not dispute that the RUA's other statutory prerequisites are present here.

---

[5] Plaintiff argues that a landowner providing an ORV for a visitor to use on their property does not fall within the scope of the RUA under *Rott v Rott*, 508 Mich 274; 972 NW2d 789 (2021), because it involves the landowner providing equipment to assist in a recreational activity. This is a misinterpretation of *Rott*. *Rott* reasoned that a recreational activity not explicitly listed in the RUA is nonetheless within its scope if it is "of the same kind, class, character, or nature" as the listed activities, and *Rott* identified the unifying characteristics shared by the listed activities: "(1) the activity traditionally could not be engaged in indoors and (2) the activity requires nothing more than access to the land—i.e., permission to be present and not trespassing—to engage in the activity or use." *Id*. at 296-297 (quotation marks and citation omitted). The proper inquiry under the second unifying characteristic in *Rott* is whether a landowner *needs to modify the land* for another to engage in that activity; it is not whether a recreational activity *in a particular case* was assisted by the owner modifying the land or by the owner providing the visitor equipment to engage in that activity. See *id*. at 297, 300.

5

We reject plaintiff's argument that the RUA only limits a landowner's potential common-law premises liability. In pertinent part, the RUA limits liability for "a cause of action . . . for injuries to a person" under certain circumstances. MCL 324.73301(1). This language is not limited to a cause of action for common-law premises liability. That the statute applies to categories of persons who are frequently involved in premises-liability actions does not mean that the statute is limited to such claims. This conclusion is reinforced by the fact that other parts of the same section contain language that more specifically precludes liability unless the "person's injuries were caused by a condition that involved an unreasonable risk of harm." See MCL 324.73301(5) and (6).[6] It is clear that plaintiff's cause of action is "for injuries to a person" and therefore falls within the scope of the RUA. MCL 324.73301(1).

Because the RUA read in isolation applies on these facts, the next question is whether the RUA applies to a statutory owner-liability claim under MCL 257.401(1) when

---

[6] Moreover, there are other statutes that, unlike this one, explicitly refer to the common law generally or premises liability specifically. See, e.g., MCL 390.1126, MCL 691.1402a(5), and MCL 333.27402(e); cf. MCL 691.1407(3) ("Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986."). Plaintiff suggests that limiting liability for a cause of action that is not tied to a condition of the land is inconsistent with the RUA's primary purpose "to encourage owners of private land to make their land available to the public" for recreational purposes. *Rott*, 508 Mich at 298 (quotation marks and citation omitted). We disagree. The Legislature could have reasonably determined that potential liability unrelated to a condition of the land would also disincentivize landowners from making their land available to the public for certain recreational activities. Unlike other states that specifically limit their recreational-use statutes to defects on the land, see, e.g., Cal Civ Code 846 and Me Rev Stat Ann, tit 14, § 159-A, Michigan's RUA contains no such limitation, and we are bound to this legislative policy choice.

a landowner owns a motor vehicle[7] that they allow another to use for recreational purposes on their property. Answering this question requires the Court to determine how the RUA and the owner-liability provision interact. The RUA is a "liability-limiting" statute that, when applicable, "eliminate[s] [a landowner's] liability for negligence, and le[aves] liability only for gross negligence and wilful and wanton misconduct." *Ballard v Ypsilanti Twp*, 457 Mich 564, 577-578; 577 NW2d 890 (1998). By contrast, owner liability under MCL 257.401(1) is "statutorily created vicarious liability," meaning that liability is not premised on any fault or negligence by the vehicle's owner. *Kaiser v Allen*, 480 Mich 31, 38; 746 NW2d 92 (2008). Rather, the vehicle's owner may be liable on the basis of someone else's negligent operation of the vehicle if the vehicle is driven with the owner's "express or implied consent or knowledge." MCL 257.401(1).

These statutes conflict where, as here, a defendant is both the landowner of the property where a covered recreational activity occurred *and* the owner of the vehicle that

---

[7] Neither party disputes the Court of Appeals' holding here that an ORV is a "motor vehicle" that is subject to owner liability under MCL 257.401(1). Compare MCL 257.33 (defining a "motor vehicle" under the Michigan Vehicle Code) and MCL 257.79 (defining a "vehicle" under the Michigan Vehicle Code) with MCL 324.81101(u) (defining an "ORV" under the Natural Resources and Environmental Protection Act (the NREPA), MCL 324.81101 *et seq*.).

A Court of Appeals panel in an earlier case also concluded that an ORV falls within the scope of the owner-liability provision. See *Van Guilder v Collier*, 248 Mich App 633, 637-639; 650 NW2d 340 (2001). The *Van Guilder* Court reasoned that an ORV fell within the applicable Michigan Vehicle Code (MVC) definitions because "[a]n ORV is self-propelled and 'may be transported or drawn upon a highway[.]' " *Id*. at 637, quoting MCL 257.79. In further support of its holding, the Court reasoned that the NREPA and the MVC should be read *in pari materia* because "both these statutory schemes relate to the same subject, i.e., motor vehicles, and are harmonious and complementary[.]" *Id*. at 639. We note that the *Van Guilder* Court's *in pari materia* analysis was arguably unnecessary in light of its holding that an ORV fell within the applicable MVC definitions.

7

was used for the recreational activity. Under the RUA, on the basis of his status as a landowner, defendant would not be liable for the decedent's injuries *unless he was grossly negligent*. But under the owner-liability provision, defendant could be liable on the basis of his ownership of the vehicle *regardless of whether he was negligent*. Thus, the statutes conflict as to whether plaintiff must demonstrate that defendant was grossly negligent to recover damages for the decedent's death. Because it is impossible "to give each [statute] full force and effect," *In re Midland Pub Co, Inc*, 420 Mich 148, 163; 362 NW2d 580 (1984), and neither statute expressly references the other, one statute must be construed as a de facto amendment of, or limitation upon, the other. See *State Bar of Mich v Galloway*, 422 Mich 188, 195; 369 NW2d 839 (1985).

In resolving this statutory conflict, the Court of Appeals reasoned that the RUA governed because it applied more specifically to the circumstances of this case than the owner-liability provision. *Milne*, 339 Mich App at 690. This Court has often stated—in accord with courts throughout the country—that when statutes conflict, the more specific provision governs over the more general one.[8] However, like any canon of statutory interpretation, this framework should not be used mechanically, and it does not apply in every situation.[9] As we have repeatedly emphasized, the ultimate goal in all questions of

---

[8] See, e.g., *Crane v Reeder*, 22 Mich 322, 334-335 (1871); *Morales v Trans World Airlines, Inc*, 504 US 374, 384; 112 S Ct 2031; 119 L Ed 2d 157 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general[.]").

[9] See *People v Pinkney*, 501 Mich 259, 283; 912 NW2d 535 (2018) (noting that the canon against surplusage is only a general rule); *Honigman Miller Schwartz & Cohn LLP v Detroit*, 505 Mich 284, 317-318; 952 NW2d 358 (2020) (noting that the canon that different words should be given different meanings is only a general rule); *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 71-72; 718 NW2d 784 (2006) (noting that the "last

statutory interpretation is "to ascertain and give effect to the Legislature's intent." *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022) (quotation marks and citations omitted). When two statutes seemingly conflict, the controlling question is how the Legislature intended for those statutes to interact. See *Attorney General ex rel McKay v Detroit & Erin Plank Rd Co*, 2 Mich 138, 141-142 (1851). General rules of statutory construction—including the canon that a specific statute applies over a general one—are tools that may assist in this endeavor, but they are not straitjackets. See, e.g., *People ex rel Platt v Oakland Co Bank*, 1 Doug 282, 287 (1844) ("In applying the maxims of interpretation, the object is throughout, first to ascertain, and next to carry into effect, the *intentions* of the framer of the law.") (quotation marks and citation omitted).[10]

In this case, we find it unhelpful in discerning the Legislature's intent to consider whether the RUA or the owner-liability provision is more specific. "To apply a canon [of statutory interpretation] properly one must understand its rationale." *Varity Corp v Howe*, 516 US 489, 511; 116 S Ct 1065; 134 L Ed 2d 130 (1996). One rationale behind this interpretative maxim is that, if the general provision were given effect over the specific

_____

antecedent" rule is only a general rule); see also *RadLAX Gateway Hotel, LLC v Amalgamated Bank*, 566 US 639, 646-647; 132 S Ct 2065; 182 L Ed 2d 967 (2012) ("Of course the general/specific canon is not an absolute rule, but is merely a strong indication of statutory meaning that can be overcome by textual indications that point in the other direction.").

[10] See also *Connecticut Nat'l Bank v Germain*, 503 US 249, 253; 112 S Ct 1146; 117 L Ed 2d 391 (1992) ("[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation[.]"); *Varity Corp v Howe*, 516 US 489, 511; 116 S Ct 1065; 134 L Ed 2d 130 (1996).

one, the more specific provision would be rendered nugatory and ineffectual.[11]  Another

frequently cited rationale is "the quite reasonable assumption that the legislature's attention

was probably focused more directly on the subject matter of the specific than on only one

aspect of a much broader subject matter." *Radzanower v Touche Ross & Co*, 426 US 148,

159 n 2; 96 S Ct 1989; 48 L Ed 2d 540 (1976) (Stevens, J., dissenting).[12]  Under both

rationales, the general/specific analysis is most likely to be probative of legislative intent

when (1) two statutes "relate to the same subject" or "share a common purpose" such that

they should be read together *in pari materia*, *People v Mazur*, 497 Mich 302, 313; 872

---

[11] See, e.g., *Taylor v Isabella Circuit Judge*, 209 Mich 97, 100-101; 176 NW 550 (1920); *Duffy v Dep't of Natural Resources*, 490 Mich 198, 215-216; 805 NW2d 399 (2011); *In re Petition for a Representation Election*, 406 Mich 647, 669; 281 NW2d 299 (1979) (COLEMAN, C.J., concurring); *City of Monroe v Jones*, 259 Mich App 443, 451-452; 674 NW2d 703 (2003); *Varity Corp*, 516 US at 511 ("This Court has understood the present canon ('the specific governs the general') as a warning against applying a general provision when doing so would undermine limitations created by a more specific provision.").

[12] See also *City of Lansing v Bd of State Auditors*, 111 Mich 327, 334-335; 69 NW 723 (1896) (HOOKER, J., dissenting) ("The general law is usually presumed to have only general cases in view, and not particular ones, which have been already provided for by the special act.  Having already given its attention to the particular subject, and provided for it, the legislature is reasonably presumed not to intend to alter that special legislation by a subsequent general enactment[.]"); *Ex parte Crow Dog*, 109 US 556, 570-571; 3 S Ct 396; 27 L Ed 1030 (1883) (reasoning that "the legislature having had its attention directed to a special subject, and having observed all the circumstances of the case and provided for them, does not intend by a general enactment afterwards to derogate from its own act when it makes no special mention of its intention so to do") (quotation marks and citation omitted); *State v Cleve*, 127 NM 240, 247; 1999-NMSC-017; 980 P2d 23 (1999) (commenting that the general/specific "rule in effect treats the special law as an exception to the general law because . . . the Legislature's attention is more particularly directed to the relevant subject matter in deliberating upon the special law"); Note, *Repeal by Implication*, 55 Colum L Rev 1039, 1044 (1955) ("[I]n enacting a specific statute, the legislature directs its attention to the particular circumstances or area with which it is dealing; but in passing a general statute, the legislature may well not have envisaged all its potential specific applications.").

10

NW2d 201 (2015),[13] and/or (2) one statute addresses a broader topic while the other statute addresses a subset of situations within that broader topic.[14] In such circumstances, courts generally presume that the Legislature gave more deliberate consideration to the specific issue when enacting the more specific statute and therefore treat this provision as "an exception to the general act or provision" that would otherwise govern to avoid rendering the more specific provision nugatory. *Crane*, 22 Mich at 334.

This inquiry pursuant to the general/specific canon is unhelpful here because the RUA and the owner-liability provision do not satisfy either condition. These statutes do not address the same subject matter or share a common purpose. The RUA is contained within the Natural Resources and Environmental Protection Act, MCL 324.81101 *et seq.*, and limits a landowner's liability under specified circumstances to gross negligence or

---

[13] See, e.g., *Malcolm v East Detroit*, 437 Mich 132, 139; 468 NW2d 479 (1991) (identifying the "well-noted principle of construction that a subsequently enacted specific statute is regarded as an exception to a prior general one, especially if they are in pari materia"); *People v Buehler*, 477 Mich 18, 26; 727 NW2d 127 (2007) ("When there is a conflict between statutes that are read *in pari materia*, the more recent and more specific statute controls over the older and more general statute.").

[14] See *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 44; 869 NW2d 810 (2015) (explaining that the general/specific canon would apply in a hypothetical situation in which "an agricultural statute sets different tax rates for 'fruits' and 'apples' "); Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 183 (providing a hypothetical in which a sign at the entrance of a park prohibits "wheeled vehicles" in the park but permits "[b]icycles and baby carriages"). We recognize that there is caselaw indicating that the general/specific canon may apply even if the more specific provision is not entirely subsumed by the more general provision. See *Safdar v Aziz*, 501 Mich 213, 218; 912 NW2d 511 (2018) (" 'When the conduct at issue falls within the scope of *both* provisions, the specific presumptively governs, whether or not the specific provision also applies to some conduct that falls outside the general.' "), quoting *RadLAX*, 566 US at 648. We do not adopt any per se rule here but rather merely recognize that the general/specific canon is *more likely* to be probative of legislative intent when the specific statute is entirely—or almost entirely—subsumed by the more general one.

11

willful and wanton misconduct if an injury occurs to someone they allowed to use their property for certain recreational purposes. MCL 324.73301(1). The primary purpose of the RUA is "to encourage owners of private land to make their land available to the public" for recreational purposes by limiting their potential liability. *Rott v Rott*, 508 Mich 274, 298; 972 NW2d 789 (2021) (quotation marks and citation omitted). By contrast, the owner-liability provision is contained within the Michigan Vehicle Code and imposes statutory vicarious liability on a vehicle owner if the negligent driving of that vehicle causes an injury. MCL 257.401(1). The purpose of this provision is "to place the risk of damage or injury upon the person who has the ultimate control of the vehicle." *Roberts v Posey*, 386 Mich 656, 662; 194 NW2d 310 (1972).[15]

While both the RUA and the owner-liability provision generally address potential civil liability for injuries and include motor vehicle use within their scope, in all other respects their "scope and aim[s] are distinct and unconnected." *Mazur*, 497 Mich at 313. That they may incidentally both apply in a limited set of circumstances does not mean that they relate to the same subject matter or share a common purpose such that they should be read together *in pari materia*. See *Richardson v Jackson Co*, 432 Mich 377, 384; 443 NW2d 105 (1989) (discussing two statutes that both referred generally to "the operation of recreation facilities" but nonetheless concluding that they should not be read *in pari materia* because the "purposes or objectives of the two statutes are quite different").

---

[15] See also *Moore v Palmer*, 350 Mich 363, 394; 86 NW2d 585 (1957) (commenting that the owner-liability provision's "obvious purpose is to make owners of automobiles liable for the negligent acts of those to whom they entrust their vehicles").

Relatedly, neither the RUA nor the owner-liability provision addresses a subset of situations that is covered more broadly by the other. Both the RUA and the owner-liability provision can—and generally do—apply entirely independently of each other. Both statutes are narrow and broad in their own ways such that determining which provision is more specific turns entirely on how you define the subject matter at issue.[16] Under these circumstances, we discern no principled basis for determining which provision is more specific than the other, nor do we see how this inquiry illuminates how the Legislature intended for these statutes to interact.[17]

Instead, we conclude that three other considerations indicate that the Legislature intended the RUA to limit an owner-liability claim. First, Michigan's owner-liability statute was originally enacted in 1909 and has been in almost continuous effect since that

---

[16] See *Radzanower*, 426 US at 159 (Stevens, J., dissenting) (arguing that the general/specific canon was unhelpful when two statutes generally operated independently of each other and both were implicated in "only a tiny fraction" of situations because "with equal logic we might describe either statute as creating an exception from the somewhat more general provisions of the other").

[17] We recognize that, in at least two prior cases, this Court has purported to apply this canon of interpretation to statutory conflicts that are arguably similar to the one presented in this case. See *Alex v Wildfong*, 460 Mich 10, 21; 594 NW2d 469 (1999) (concluding that a statute addressing a government employee's tort liability was more specific than the owner-liability provision); *Miller v Allstate Ins Co*, 481 Mich 601, 613-614; 751 NW2d 463 (2008) (concluding that a statute limiting standing to challenge whether a corporation was properly formed was more specific than a statute allowing an insurer to decline payment for medical treatment that was not lawfully rendered). However, in neither case did the Court clearly explain how it was defining the "subject matter" at issue or how the general/specific canon illuminated the way in which the Legislature intended for the statutes to interact. Moreover, both opinions also included other reasons in support of their holdings. See *Wildfong*, 460 Mich at 21-22; *Miller*, 481 Mich at 614-616. Accordingly, we find these decisions of little assistance in applying the general/specific canon in this case.

time,[18] while the RUA was first enacted in 1953.[19]  That a claim for owner liability was longstanding when the RUA was enacted supports the conclusion that the Legislature intended the RUA to limit owner liability in some circumstances.  See *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993) ("[T]he Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws.")

Second, the RUA contains many qualifications and limitations on its applicability,[20] and the statute has been amended multiple times to clarify which specific recreational activities are within its scope.  See *Rott*, 508 Mich at 291-292.  Yet the RUA contains no explicit carveout for owner liability.  Given the specificity of the RUA and the Legislature's close scrutiny in defining its scope, we are hesitant to presume that the Legislature intended an additional implicit limitation.  See *Alex v Wildfong*, 460 Mich 10, 21-22; 594 NW2d

---

[18] See generally *Moore*, 350 Mich at 383-385.  In 1913, this Court held that the 1909 owner-liability statute was unconstitutional, and the Legislature reenacted the statute in 1915 with revisions responsive to this Court's holding.  *Id*. at 384-385, citing *Daugherty v Thomas*, 174 Mich 371, 390; 140 NW 615 (1913).  While Michigan's owner-liability provision has been amended and recodified multiple times since then, it has consistently provided that a motor vehicle owner may be held vicariously liable if the negligent driving of that vehicle causes an injury.  See generally *Mull v Equitable Life Assurance Society of the United States*, 444 Mich 508, 521; 510 NW2d 184 (1994); *Travelers Ins v U-Haul of Mich, Inc*, 235 Mich App 273, 280 n 5; 597 NW2d 235 (1999).

[19] *Rott*, 508 Mich at 291.

[20] The RUA begins with the carveout "[e]xcept as otherwise provided in this section" and ends by clarifying that a cause of action is not precluded against one who is grossly negligent or commits willful and wanton misconduct.  MCL 324.73301(1).  The statute further delineates which potential defendants are within its scope (owner, tenant, or lessee), and which potential plaintiffs are within its scope (those on the land of another, with or without permission, for the purpose of engaging in certain forms of recreational activities, without paying valuable consideration).  *Id*.

469 (1999) (holding that the owner-liability provision does not apply to governmental employees because the Legislature has formulated a clear and detailed statutory framework for determining the extent of governmental immunity).

Finally, applying the RUA would not *entirely eliminate* potential owner liability when a landowner's vehicle is used for recreational purposes on their property. Rather, applying the RUA would require a plaintiff alleging owner liability under MCL 257.401(1) to show that their "injuries were caused by the gross negligence or willful and wanton misconduct" of the landowner who owned the vehicle at issue. MCL 324.73301(1). While this interpretation effectively amends the owner-liability provision in certain circumstances from a vicarious-liability statute to one requiring fault, it gives the owner-liability provision at least some effect under these limited circumstances. See *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 171; 615 NW2d 702 (2000) (noting that this Court is "[c]onstrained to apply the statutory language as best as possible as written"). By contrast, holding that the owner-liability provision applies without regard to the RUA would render the RUA *entirely ineffectual* under some circumstances in which, under its plain language, it otherwise would apply. Applying the RUA to an owner-liability claim in this context gives the maximum possible effect to both statutes. See, e.g., *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) ("As far as possible, effect should be given to every phrase, clause, and word in the statute.").

In sum, we conclude that the Legislature intended the RUA to limit owner liability under MCL 257.401(1) because owner liability was longstanding when the RUA was enacted, the RUA is a detailed provision yet has no exception for owner liability, and this reading gives optimal effect to both statutes.

15

## IV. CONCLUSION

The RUA applies to plaintiff's proposed owner-liability claim and requires her to demonstrate that defendant was grossly negligent or engaged in willful and wanton misconduct to prevail. Because plaintiff has not challenged on appeal the trial court's conclusion that there was no factual support for a finding that defendant was grossly negligent, the trial court correctly granted defendant's motion for summary disposition and denied plaintiff's motion to amend her complaint. Accordingly, we affirm.

Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

16

S T A T E   O F   M I C H I G A N

SUPREME COURT

REBECCA MILNE, Personal
Representative of the ESTATE OF RILEY
ROBINSON,

       Plaintiff-Appellant,

v                                                                                      No. 164190

LARRY ROBINSON, SR.,

       Defendant-Appellee,

and

ANN ROBINSON,

       Defendant.

_____

VIVIANO, J. (*concurring in the result only*).

I concur in the result reached in the majority's opinion but disagree with its reasoning.  Instead, I agree with the Court of Appeals that the conflict between the owner-liability statute, MCL 257.401(1), and the recreational land use act (RUA), MCL 324.73301(1), is properly resolved by application of the general/specific canon.

The only claim remaining in this case is the owner-liability claim asserted in plaintiff's proposed amended complaint against the decedent's grandfather, who owned both the off-road vehicle (ORV) and the property where it was being operated at the time of the accident.  MCL 257.401(1) provides, in relevant part, that "[t]he owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle

whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law." As the majority notes, a claim under this vicarious-liability statute is not premised on any fault or negligence by the vehicle's owner.[1]

The majority ably explains why the liability-limiting provision of the RUA applies to this case, eliminating any claim of negligence against defendant Larry Robinson for the noncommercial, recreational use of an ORV on his property. And I agree with the majority's conclusion that the owner-liability statute conflicts with the RUA on the facts of this case: one statute creates a cause of action against the owner of a motor vehicle based on the operator's negligence, while the other eliminates any such claim against a property owner (or tenant or lessee) when the vehicle is being operated for noncommercial, recreational use on the land of another.

Unlike the majority, however, I would apply the general/specific canon to resolve the conflict. The canon applies to resolve conflicting provisions in statutes enacted at different times, like the ones at issue in this case. See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 185 ("Indeed, that is perhaps [the general/specific canon's] most common application, since legislators are often—despite the presumption to the contrary—unfamiliar with enactments of their predecessors. They unwittingly contradict them."). And, although a similar canon may apply to resolve a conflict when two statutes are *in pari materia*—i.e., when they relate to the same subject matter or share a common purpose—this is not a condition precedent to

---

[1] Plaintiff's proposed amended complaint appears deficient on its face because it does not allege who was operating the vehicle at the time of the accident, much less that the operator was doing so negligently.

application of the general/specific canon.[2] All that is needed is enough overlapping subject matter for the two statutes to irreconcilably conflict as applied in a given case.[3]

Finally, while it is sometimes difficult to determine whether a provision is a general or specific one, see *Reading Law*, p 187, that is not the case here. The RUA, like the immunity statute at issue in *Alex v Wildfong*, 460 Mich 10, 21; 594 NW2d 469 (1999), "is certainly the more specific measure in this instance." The RUA is very specific and has many limitations on its applicability, as the majority itself makes clear. See *ante* at 14 n 20. As the Court of Appeals held, "[c]learly, the RUA is the more-specific statute as it deals directly with the potential liability of landowners when other persons recreationally use their property with ATVs. By contrast, the [owner-liability statute] applies to all motor

---

[2] We have previously stated that when "two statutes are not in pari materia, the rule of the specific and later act controlling the earlier and general act is inapplicable." *Richardson v Jackson Co*, 432 Mich 377, 384-385; 443 NW2d 105 (1989), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 51.05, pp 499-500. That precise assertion, however, is not made in the cited section. Sutherland instructs that "[g]eneral and special acts may be in pari materia" and "[i]f so, they should be construed together." Sands, p 499. See also *Reading Law*, p 252 (discussing the related-statutes canon and stating that "laws dealing with the same subject—being *in pari materia* (translated as 'in a like matter')—should if possible be interpreted harmoniously"). And while the more specific act usually prevails in this setting, too (as an exception to or qualification of the more general one), other than the unsupported assertion in *Richardson*, I could find no authority for the notion that the general/specific canon only applies to resolve conflicts in statutes that are *in pari materia*. See, e.g., *Reading Law*, pp 183-188 (discussing the general/specific canon and containing no such requirement). And that is no doubt why it is easy to find examples of courts applying the general/specific canon without determining that the statutes at issue are *in pari materia*. See, e.g., *Alex v Wildfong*, 460 Mich 10, 21-22; 594 NW2d 469 (1999); *Morton v Mancari*, 417 US 535, 550-551; 94 S Ct 2474; 41 L Ed 2d 290 (1974). In short, unlike the related-statutes canon, application of the general/specific canon does not depend on a finding that the statutes are *in pari materia*.

[3] For the same reason, I find even less persuasive the majority's unsupported preference for applying the canon when "the specific statute is entirely—or almost entirely—subsumed by the more general one." *Ante* at 11 n 14.

3

vehicles in all places and circumstances." *Milne v Robinson*, 339 Mich App 682, 690; 984 NW2d 844 (2021). This is consonant with our observation that "the [owner-liability statute] is a broad measure widely applicable to owners of vehicles." *Alex*, 460 Mich at 21.

In short, I believe the general/specific canon applies here to resolve the conflict between the RUA and the owner-liability statute.[4] Applying the RUA as the more specific statute, defendant cannot be liable for a claim of ordinary negligence or imputed negligence. For these reasons, I respectfully concur only in the result of the majority opinion.

David F. Viviano

---

[4] I find the rationale the majority does provide to be confusing and somewhat contradictory. The timing of the enactments, by itself, does not answer the question of which statute should prevail, although it may be pertinent to another interpretive canon, such as implied repeal. See *Reading Law*, p 327 ("When a statute specifically permits what an earlier statute prohibited, or prohibits what it permitted, the earlier statute is (no doubt about it) implicitly repealed."). See generally *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 651-652; 852 NW2d 865 (2014) (discussing repeals by implication and the presumption disfavoring them). And the latter two points the majority makes actually support application of the general/specific canon. The majority asserts that "the RUA contains many qualifications and limitations on its applicability" and, indeed, refers to "the specificity of the RUA"—the very things that I believe make it the more specific statute. See *ante* at 14-15. And the majority's assertion that "applying the RUA would not *entirely eliminate* potential owner liability when a landowner's vehicle is used for recreational purposes on their property" is also consistent with application of the canon: "The specific provision does not negate the general one entirely, but only in its application to the situation that the specific provision covers." *Reading Law*, p 185. Like the first point, it is unclear what persuasive force this observation has if it is not tethered to an interpretive theory.